CLIFFORD E. BRADLEY AND ANOTHER v. BARNEY PAUL.[1]

November 24, 1922.

No. 23,048.

Injunction to enforce agreement not to re-enter same business at same place.

1. The West Hotel Auto Livery Inc., controlled and managed by defendant and his brother, sold its business including all its property

[1]Reported in 190 N. W. 789.

and equipment to plaintiff Bradley, and as a part of the contract defendant agreed not to re-engage in the auto livery business in the city of Minneapolis for a period of 3 years. The record justified the court in holding that he had violated this agreement by becoming manager of an auto livery business operated by a company organized by his near relatives.

**Instruments of transfer of title did not supersede original contract.**

2. The record also justified the court in holding that the instruments executed for the purpose of evidencing transfers of the property were not intended to be a complete performance of the contract, and that the provision against re-engaging in the auto livery business was not waived or abrogated by failure to incorporate it in such instruments, and that plaintiffs could maintain an action to enforce this provision.

Action in the district court for Hennepin county to restrain defendant from engaging in the auto livery or taxicab business in the city of Minneapolis either directly or indirectly. From an order, Dickinson, J., granting a temporary injunction, defendant appealed. Affirmed.

*H. Z. Mendow*, for appellant.
*Shaw, Safford, Ray & Shaw*, for respondents.

TAYLOR, C.

This is an appeal from an order granting a temporary injunction restraining defendant from engaging in the auto livery business in the city of Minneapolis.

The West Hotel Auto Livery, a corporation, controlled and managed by defendant and his brother, operated a taxicab and auto livery business in the city of Minneapolis for several years, and had a lease or right to use an automobile stand at the West Hotel. Defendant and his brother, as partners under the firm name of "Paul Brothers," also operated a garage in a building in that city for which they held a lease. On July 30, 1921, the corporation and the partnership jointly made a contract with plaintiff Bradley by which, for a valuable consideration, they gave Bradley an option to purchase the business of both, including all the property and equip-

ment of both and the good will of the business together with the right to use any and all trade names theretofore used by the vendors, for the sum of $50,000.

The contract set forth fully and in detail the engagements and obligations to be performed or assumed by each party in case Bradley elected to purchase. It provided for the transfer to Bradley of the lease of the garage and of the right to use the automobile stand at the hotel, also of 21 Cadillac automobiles and of all insurance policies and licenses in force pertaining to the business, and also of all property and equipment of every kind used in connection with either the auto livery business or the garage. It provided that the vendors should not engage in the auto livery or taxicab business in the city of Minneapolis for a period of 3 years from September 1, 1921. It provided that Bradley should convey to the vendors his home in the city of Minneapolis at an agreed valuation as a part of the first payment. It provided that the deferred payments should be evidenced by a promissory note payable in instalments and be secured by a chattel mortgage on the property. It provided that Bradley should not sell any of the automobiles nor move any of them out of the city until the entire purchase price had been paid. It recited that it was understood that Bradley expected to organize a corporation to take over and operate the business, and provided that in case he did so he should cause such corporation to become a joint obligor with himself on all notes and obligations given to the vendors and then outstanding. It provided that the contract should become binding upon both parties and upon their heirs, assigns and successors, if accepted by Bradley in writing on or before August 31, 1921, and that after such acceptance nothing therein stated should affect the right of either party to maintain an action for specific performance. It further provided that the vendors should have ten days after Bradley elected to accept the contract in which "to deliver proper bills of sale and assignments conveying good and sufficient title of all of the above described property," and that upon the delivery of such papers Bradley should convey his home and pay the remainder of the first instalment of the purchase price. On August 24, 1921, Bradley

paid $500 on the purchase price and the contract was modified by increasing the total purchase price to the sum of $51,000, and by providing that Bradley should pay to the Cadillac Company a balance due that company for the automobiles, and by reducing the amount of the cash instalment to be paid on delivery of the title papers.

On September 1, 1921, the vendors executed two instruments in performance of their agreement to convey title. One evidenced a conditional sale of the auto livery business, including the automobiles, the right to use the automobile stand at the hotel, the licenses and insurance policies, and the good will of the business with the right to use the trade names theretofore used by the vendors, for the sum of $48,000. It acknowledged payment of $10,200 of the purchase price, and provided that the remainder thereof should be paid in instalments at the times and in the manner therein specified, and that the title to the property should remain in the vendors until the entire purchase price had been paid, and that, in case of default the vendors should give notice thereof and if the same was not cured within ten days thereafter, that they should have the right to retake the property. It contained an agreement on the part of Bradley to make the payments in the manner and amounts therein specified. The other instrument evidenced a conditional sale of the garage outfit for the sum of $3,000 to be paid in instalments as therein specified, and was similar in form to the other. On the same date Bradley transferred "all of the personal property and rights, including good will, which had been acquired by him by virtue of said contract and conveyances" to plaintiff Bradley Phillips Auto Livery Company, of which he is general manager and in which he holds one-half of the capital stock. This company has conducted the business ever since and has performed all the conditions of the contract.

About March 1, 1922, the "Paul Auto Livery" began operating an auto livery business in the city of Minneapolis, using Cadillac cars, with a stand at the Majestic Hotel a short distance from the West Hotel. It seems that articles of incorporation of this company were drawn February 28, 1922, but were not filed until March

11, 1922, the day after the service of the summons in this action. The incorporators are defendant's wife, father, mother, sister and son. Defendant is not an officer or stockholder of the company, but acts as manager.

Defendant insists that the court was not justified in holding that he had engaged in the auto livery business contrary to his agreement with plaintiffs, as he was neither an officer nor a stockholder of the Paul Auto Livery Company. All the incorporators of that company are his near relatives, and the evidence warranted a finding that, both before and after the incorporation of the company, he was the active manager of the auto livery business carried on under that name. And we think that the circumstances as disclosed by the record justified the court in holding that his part in that business was such as to violate his obligation to plaintiffs, and in suspecting that the corporation was organized merely as a device by which he hoped to be able to carry on an auto livery business without incurring liability under his contract.

Defendant's main contention is to the effect that the original contract was merged in and superseded by the contracts of conditional sale, and, as the stipulation not to re-engage in the auto livery business in the city of Minneapolis was not inserted in these latter contracts, that it must be considered as abandoned or waived and no longer in force. If it appeared that these subsequent contracts were given and accepted as a full and complete performance of the original contract, defendant's position would be well taken. But where the original contract contemplates the execution of other instruments, not as a complete performance of the contract but only as a part performance thereof, the instruments so executed cover only those elements of the contract embodied therein, and the provisions of the original contract as to other matters remain in force. Bretto v. Levine, 50 Minn. 168, 52 N. W. 525; Independent Harvester Co. v. Malzohn, 147 Minn. 145, 179 N. W. 727; 27 R. C. L. 532, §§ 264, 265.

Here the contract provided that the vendors should deliver "proper bills of sale and assignments conveying good and sufficient title of all of the above described property to the purchaser." We

find nothing in this provision to indicate that the parties intended that these instruments were to be given or accepted as a full performance of the contract. On the contrary, it indicates that they were to be given for the purpose of transferring title in part performance thereof. When the time arrived for the vendors to transfer the property, they desired to put the transfers in the form of conditional sales, instead of conveying title absolutely by bills of sale and assignments as provided in the contract, and obtained Bradley's consent to make the transfers in that form. No suggestion was made that the instruments evidencing the conditional sales were to be given or accepted as anything other than substitutes for the specified bills of sale and assignments or than a partial performance of the original contract. So far as they covered the same ground as the original contract or were inconsistent with it, they undoubtedly superseded it, but we find nothing to indicate that the parties intended to abandon or abrogate those provisions of the original contract relating to matters not covered by the later contracts. The trial court necessarily held that the parties did not intend these subsequent contracts as a full and complete performance of the original contract, and we think the record justified that conclusion. Among the matters not covered by these subsequent contracts is the provision that the vendors were not to re-engage in the auto livery business in the city of Minneapolis for a period of 3 years, the provision that none of the automobiles were to be moved out of the city until the entire purchase price had been paid, the provision that the corporation organized by Bradley should become liable for the obligations entered into by him, and the provision that nothing stated in the contract should be construed as abridging the right of either party to maintain an action for specific performance.

Defendant also asserts that the contracts of conditional sale were assigned and transferred by plaintiff Bradley to plaintiff Bradley Phillips Auto Livery Company, but that the original contract was not transferred by Bradley to the company, that the company cannot maintain this action as the right sought to be enforced never passed to the company, and that Bradley cannot maintain the action

as it is brought for the benefit of the company which owns and carries on the business. The objection urged is probably sufficiently answered in Holliston v. Ernston, 124 Minn. 49, 144 N. W. 415. But, however this may be, we think that the claim that there is no evidence that his right was transferred to the company is not borne out by the record. The complaint alleges that Bradley sold, assigned and transferred to the company "all of the personal property and rights, including good will, which had been acquired by him by virtue of said contract and conveyances." The contract here mentioned can be no other than the original contract. The complaint was duly verified and was one of the affidavits considered by the court at the hearing.

We fail to find anything in the record which would warrant interfering with the action of the trial court and its order is affirmed.