Marianne LAPADAT, Appellant,

v.

**CLAPP-THOMSSEN COMPANY, a Minnesota corporation, Respondent.**

No. C7–86–610.

Court of Appeals of Minnesota.

Dec. 23, 1986.

Terrence P. Durkin, McMenomy & Severson, P.A., Rosemount, for appellant.

David B. Potter, Oppenheimer, Wolff & Donnelly, St. Paul, for respondent.

Heard, considered and decided by CRIPPEN, P.J., and LANSING and LESLIE, JJ.

## OPINION

LANSING, Judge.

Marianne Lapadat, a real estate agent, appeals the trial court's order finding that she is not entitled to commissions on real estate closings which occurred after her termination. We affirm.

## FACTS

Marianne Lapadat has been a licensed real estate agent in Minnesota for 12 years. Clapp-Thomssen Company is a commercial and residential real estate brokerage corporation.

Several times in early 1980, Clapp-Thomssen offered Lapadat a sales position, but she declined. Later that year, Clapp-Thomssen obtained an exclusive brokerage contract for the Woodbury Hills townhome project in Woodbury, Minnesota. Under the contract, Woodbury Hills agreed to pay Clapp-Thomssen a $1,200 commission for each unit it sold, payable on closing. The agreement was terminable at will by either party and provided that Clapp-Thomssen would not receive any commission on units which closed after the brokerage agreement was terminated.

When approached about the Woodbury Hills project, Lapadat indicated an interest in taking the job of sales manager. Clapp-Thomssen and Lapadat orally agreed that Lapadat would receive an $800 commission for each unit sold at Woodbury Hills and that her main responsibility as sales manager was to sell homes. The job also included setting up the sales office, training the sales staff, designing model homes, and creating a sales program. Because of these additional duties, Clapp-Thomssen agreed to pay her commission whether she was personally involved in a sale or not.

In January 1981 Lapadat transferred her real estate license to Clapp-Thomssen and began work at Woodbury Hills. She also sold other real estate for the company.

On March 5, 1981, Lapadat signed a standard real estate sales agent agreement with Clapp-Thomssen. This sales agent agreement defined the employment relationship, including termination and payment of sales commission. On April 15, 1981, Lapadat and Clapp-Thomssen signed a second agreement (April agreement) to cover the Woodbury Hills project.[1] The

1. Lapadat drafted this agreement and Clapp-

Thomssen accepted it, with one minor change,

April agreement outlined Lapadat's obligations and compensation for the Woodbury Hills project.

The spring of 1982 was a poor sales period for real estate. Sales were down at Woodbury Hills and other Clapp-Thomssen projects. On July 25, 1982, Lapadat reprimanded a Clapp-Thomssen employee for being late. The employee reported this to her father, a Clapp-Thomssen executive. Clapp-Thomssen claimed it received other complaints about Lapadat's performance.

In August 1982 Lapadat was removed from both the Alderwood project, an additional sales responsibility she had undertaken, and the Woodbury Hills project. She was given the option of continuing at Clapp-Thomssen as a general sales agent without specific project responsibilities.

Lapadat continued to work at Clapp-Thomssen for approximately two months. On September 27, 1982, she decided to leave Clapp-Thomssen and moved her real estate license to another realtor. Clapp-Thomssen paid Lapadat her $800 commission for each Woodbury Hills unit closed until she removed her license.

After Lapadat left, Clapp-Thomssen sold 29 additional Woodbury Hills units. The commission for those closings went to salespersons whom Lapadat trained. In December 1984 Clapp-Thomssen's exclusive brokerage listing with the Woodbury Hills townhome project was terminated.

Lapadat sued Clapp-Thomssen for her share of the commissions earned by Clapp-Thomssen on the 29 Woodbury Hills units. The trial court found Lapadat was not entitled to the commissions, and she appeals.

## ISSUE

Is appellant entitled to commissions on the sale of units which closed after her termination?

## ANALYSIS

The trial court denied Lapadat's claim for unpaid commissions on two bases.

which clarified that Lapadat worked for Clapp-

First, the court found the April agreement modified and became part of the sales agent agreement, which provided that agents are not entitled to commissions on sales which close after termination of their employment. Second, the court found that even if the April agreement was separate from the sales agent agreement, Lapadat was not entitled to the commissions.

The trial court heard testimony from both Lapadat and Clapp-Thomssen on their intentions in entering into the contract, the custom and usage of the real estate industry, the circumstances surrounding the agreement, and the nature of the employment. Duration and construction of a contract are questions of fact, and the trial court's determination is entitled to appropriate deference on review. *See Tonka Tours, Inc. v. Chadima*, 372 N.W.2d 723, 726 (Minn.1985).

Taking into account some latitude for the trial court's judgments of credibility, we believe the findings are supported by the evidence. Additionally, the findings are supported by the language of the sales agent agreement. This agreement sets out the usual employment obligations, payment provisions, and rights of termination between a broker and sales agent. It does not include details of commission agreements, but clearly contemplates supplementary agreements which would provide for commission amounts. The April agreement on its face relates primarily to commissions and appears supplemental to the earlier sales agent agreement. We do not believe the court's factual finding was erroneous.

Because the April agreement affected only the determination of commissions under the sales agent agreement, the remaining provisions of the agreement remain in force. *Bradley v. Paul*, 153 Minn. 441, 445, 190 N.W. 789, 790 (1922); *see also First National Bank of Moorhead v. St. Anthony & Dakota Elevator Co.*, 171 Minn. 461, 214 N.W. 288 (1927) (when contract is modified, it consists thereafter of

Thomssen, not Woodbury Hills.

the new terms and all of the old ones left unchanged).

The remaining provisions of the sales agent agreement include a provision for payment of commissions to agents after the agreement is terminated. Article X, paragraph C, of the general sales agreement states:

> Salesman shall not be compensated in respect of any transaction completed subsequent to termination of this agreement unless agreed to in writing by Broker.

Nothing in the April agreement can reasonably be read to override this provision. Clapp-Thomssen paid Lapadat a commission on the Woodbury Hills units which closed after she was removed from the project but before she removed her license. Clapp-Thomssen ceased paying her commissions only after she voluntarily left the company. Lapadat was not guaranteed a salary at Woodbury Hills, nor is she a licensed broker. The April agreement, which she drafted, refers to payments as commissions. While the term "employed" in the April agreement suggests job duties other than sales, payment was conditioned upon the closing of a sale.

 We also agree with the trial court's determination that Lapadat would not prevail even if the April agreement were viewed as a separate contract. The April agreement is silent on the issue of duration; as a result, it is terminable at will as a matter of law. *See Pine River State Bank v. Mettille*, 333 N.W.2d 622, 627 (Minn.1983). A party to an agreement terminable at will is not entitled to payment of commissions after the employment is terminated. *Buysse v. Paine, Webber, Jackson & Curtis, Inc.*, 623 F.2d 1244, 1249–50 (8th Cir.1980) (applying Minnesota law).[2]

The trial court did not err in denying Lapadat's claim for commission payments following her resignation.

---

**2.** In 1984 the Minnesota legislature enacted Minn.Stat. § 181.145, subd. 2, which specifically provides:

> [W]hen any * * * company * * * terminates the salesperson, or when the salesperson resigns his or her position, the employer shall promptly pay the salesperson * * * his or her commissions *earned through the last day of employment* * * *.

*See* Minn.Stat. § 181.145, subd. 2 (1984) (emphasis added).