John C. DEERSON, Appellant,

v.

METAL–MATIC, INC., Teamsters Local 970, and Minneapolis Commission on Civil Rights, Respondents.

No. C3–87–1814.

Court of Appeals of Minnesota.

April 26, 1988.

Review Denied June 29, 1988.

---

Charles L. Friedman, McMenomy & Severson, P.A., Apple Valley, for Deerson.

John W. Polley, Reid Carron, Faegre & Benson, Minneapolis, for Metal–Matic, Inc.

James T. Hansing, Minneapolis, for Teamsters Local 970.

Robert Alfton, City Atty., Allen B. Hyatt, Asst. City Atty., Minneapolis, for Minneapolis Com'n on Civil Rights.

Heard, considered and decided by FOLEY, P.J., and NORTON and MULALLY *, JJ.

## OPINION

NORTON, Judge.

John Deerson sued Metal–Matic, Inc., his former employer, and Teamsters Local 970, alleging discriminatory treatment based on his having multiple sclerosis. Following a hearing before a panel of the Minneapolis Commission on Civil Rights, Deerson's complaint was dismissed for failure to establish a prima facie case of discrimination. Deerson appealed. We affirm.

### FACTS

Appellant John Deerson was hired by respondent Metal–Matic in January 1980. He worked in the tool room at the Metal–Matic plant as a surface grinder, grinding new tooling parts and sharpening dyeblocks.

In February 1982, Deerson was laid off for economic reasons. While Deerson was on layoff, Metal–Matic and Teamsters Local 970 renegotiated the collective bargain-

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

ing agreement. As a result of the renegotiation, a new position of "grinder/polisher" was created. The new position was a labor grade 5 position. With the creation of a grade 5 grinder/polisher position, Deerson's position of grade 3 "toolroom machinist" was eliminated. Deerson and the other grade 3 toolroom machinists were upgraded to labor grade 2 "toolroom machinist/grinder." Grade 2 positions are higher paid than grade 5.

In April 1983, Metal–Matic determined it needed a grade 5 grinder/polisher to sharpen dye-blocks. Notice was posted in the plant in accordance with the collective bargaining agreement and Jerry Cleveland was hired from inside the company pursuant to the seniority provision of the agreement. Deerson was not recalled because he was a labor grade 2 and the opening called for a labor grade 5.

In May of 1983, Deerson was recalled from layoff. Before he was allowed to return to work, Deerson was required to undergo a physical examination in keeping with Metal–Matic's practice for all employees who have been laid off for a significant period.

Deerson subsequently gave the results of his physical to Irv English, Metal–Matic's Director of Industrial Relations. The examining physician's report indicated that Deerson's ability to return to work was "reserved, pending additional information." English asked Deerson what this meant, and Deerson stated he had multiple sclerosis. English then asked how it would affect his ability to work; Deerson replied it would not affect his work.

Deerson resumed working at Metal–Matic in the tool room. He was assigned to operate the OD (outside diameter) grinder, a machine used to grind "rolls," which determine the outside diameter of the metal tubing Metal–Matic produces. Jerry Kalvestran, Metal–Matic's Engineering Manager, testified that Deerson was assigned to the OD grinder because it was appropriate work for someone of Deerson's labor grade, Metal–Matic needed OD grinding work done, and there was no need for another person to sharpen dye-blocks on the surface grinder.

Deerson had trouble operating the OD grinder almost immediately. The rolls must be ground within very narrow tolerances—as little as one-half thousandth of an inch—to work properly in Metal–Matic's tube mills, and Deerson had difficulty meeting these tolerances.

On June 23 and 24, 1983, one of Metal–Matic's six tube mills shut down for 20 hours. In investigating the shut down, Metal–Matic found it was caused by rolls that exceeded allowable tolerances by 100 times. These defective rolls had been ground by Deerson. Other rolls Deerson had ground, but which had not been sent out to the plant, were similarly defective and would have caused a tube-mill shutdown. Jerry Kalvestran also believed that Deerson had thrown away a roll, valued at approximately $300, to hide his mistakes on it.

On June 24, 1983, Kalvestran decided to fire Deerson. His stated reasons were failure to meet required tolerances; failure to follow directions; concern that Deerson's work would cause another tube-mill shutdown; and Kalvestran's belief that Deerson had thrown away a roll.

Following Deerson's termination, George Behr, the shop steward for Local 970, tried to persuade Metal–Matic to reinstate Deerson on probationary status or at a lower labor grade. Metal–Matic refused. Behr then spoke with Deerson, telling him he could take a quit, which would leave his employment record clean. Deerson eventually did agree to take a quit, but apparently changed his mind. On July 1, 1983, the union received a grievance letter from Deerson.

Following receipt of Deerson's letter, the union concluded the grievance had not been timely filed and refused to pursue it. In addition, by letter dated July 12, 1983, Irv English wrote to Deerson indicating that his grievance was filed late; that his termination was still considered a quit; and that if Deerson wanted, the termination could be changed from a quit to a discharge.

On July 18, 1983, Deerson filed a charge of discrimination against Metal–Matic, alleging he was terminated based on his age and his disability. On August 24, 1983, he filed a similar charge against Local 970, alleging it had refused to represent him with his grievance based on his age and disability. The age discrimination charges were later dropped.

The Minneapolis Commission on Civil Rights heard testimony on seven dates between April 27 and May 15, 1987. After Deerson's case had been presented, Metal-Matic and Local 970 moved for judgment of dismissal for failure to establish a prima facie case of discrimination. Their motions were granted.

### ISSUES

1. Does the record support the Commission's finding that John Deerson did not establish a prima facie case of discriminatory termination by Metal–Matic?

2. Does the record support the Commission's finding that John Deerson failed to establish a prima facie case that Local 970 refused to pursue Deerson's grievance based on his disability?

### ANALYSIS

#### Scope of Review

Under the Minneapolis Civil Rights Ordinance, judicial review of a final decision of a hearing committee is governed by the Minnesota Administrative Procedure Act, Minn.Stat. §§ 14.01–.69 (1986). Minneapolis Code of Ordinances § 141.60(b).

Under the APA,

In a judicial review under sections 14.-63 to 14.68, the court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:

\* \* \* \* \* \*

(e) Unsupported by substantial evidence in view of the entire record as submitted; \* \* \*

Minn.Stat. § 14.69 (1986).

Appellant contends the Commission's findings are not supported by substantial evidence. "Substantial evidence" has been defined:

1) [S]uch relevant evidence as a reasonable mind might accept as adequate to support a conclusion; 2) more than a scintilla of evidence; 3) more than 'some evidence'; 4) more than 'any evidence'; and 5) evidence considered in its entirety. There are correlative rules or principles that must be recognized by a reviewing court, such as: 1) unless manifestly unjust, inferences must be accepted even though it may appear that contrary inferences would be better supported; 2) a substantial judicial deference to the fact-finding processes of the administrative agency; and 3) the burden is upon the appellant to establish that the findings of the agency are not supported by the evidence in the record, considered in its entirety.

*Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 825 (Minn.1977).

### I.

In analyzing whether Deerson has established a prima facie case of discrimination, a four-step test can be applied:

1. He is a member of a protected class;
2. He was qualified for the job from which he was discharged;
3. He was discharged despite his qualification for the job; and
4. After his discharge, Metal–Matic assigned the job to a non-member of Mr. Deerson's class.

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 803, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973); *Sigurdson v. Isanti County,* 386 N.W.2d 715, 720 (Minn.1986). The fourth element could also be established by showing that similarly situated nondisabled employees "were not discharged for nearly identical behavior." *Swanigan v. Western Airlines, Inc.,* 396

N.W.2d 607, 612 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Jan. 21, 1987).

The first element is not contested. The second and fourth are the elements at issue.

Appellant argues that he was qualified to work as a surface grinder and the Commission's finding that he was not should be reversed. Deerson was not fired from his surface grinder job; he was fired from his OD grinder job.

Appellant argues, however, that Metal–Matic transferred him from the surface grinder to the OD grinder because Metal–Matic knew Deerson could not operate the OD grinder and this would provide a reason to fire him.

■ The Commission found that the transfer from surface grinder to OD grinder was not based on any discriminatory intent. Instead, the Commission found the transfer was based on the renegotiation of the collective bargaining agreement and Metal–Matic's need for OD grinding rather than surface grinding.

There is ample evidence in the record to support these findings. It is significant that the change in Deerson's labor grade occurred before anyone at Metal–Matic was aware of his disability. In addition, there was no evidence that the transfer was based on a discriminatory intent. In the absence of any evidence to the contrary, the Commission was justified in finding the transfer was nondiscriminatory.

Deerson contends Metal–Matic could have let a labor grade 2 employee work on the surface grinder. The record shows, however, that Metal–Matic had given the surface grinder job to Jerry Cleveland; that any excess surface grinding was done by Norm Melcher, who also works in the toolroom; and that Deerson, who had far less seniority, could not "bump" either of these two to make room for him at the surface grinder job.

Appellant contends the OD grinder requires more dexterity than the surface grinder, that Metal–Matic knew Deerson would be unable to perform the work because of the greater dexterity required,

and that this shows Metal–Matic's discriminatory intent. The testimony of Kenneth Stiras, the supervisor of the tool room at Metal–Matic, was that, "[a]s far as dexterity goes, there isn't a lot of difference, I don't think." This evidence refutes appellant's contention.

■ Appellant next contends that this matter should be remanded to the Commission to amend the findings of fact by adding that the rumor that Deerson threw away a roll was never confirmed. This rumor was one of several reasons given for Deerson's termination. A remand to add that the rumor was never confirmed would serve no useful purpose.

■ Deerson's final argument regarding his termination is that, contrary to the Commission's finding, there is substantial evidence that Irving English was not the only person at Metal–Matic who knew Deerson had multiple sclerosis. There is evidence that other people at Metal–Matic knew of Deerson's disability. From this, Deerson contends, the Commission should have inferred that others were told, or that others should have been told and were not, and that either action would support a finding of discrimination.

Deerson cites no authority for his proposition that failure to tell his supervisors of his multiple sclerosis is discriminatory. In addition, his argument is based on the credibility of the witnesses, which is for the finder of fact to determine. *DeMars v. State,* 352 N.W.2d 13, 16 (Minn.1984); *State v. Hagen,* 382 N.W.2d 556, 559 (Minn. Ct.App.1986). There was no evidence that any of the people involved in the decision to terminate Deerson knew of his disability. *See Butler v. Department of the Navy,* 595 F.Supp. 1063, 1067–68 (D.Md.1984) (where terminated worker with non-obvious handicap did not affirmatively inform employer of handicap, court inferred termination was not due to handicap).

Finally, the Commission heard testimony from a former employee of Metal–Matic who has M.S. The testimony of this individual reflected the steps Metal–Matic took to accommodate his handicap and would

seem to indicate that Metal–Matic would have made some accommodation for Deerson's multiple sclerosis if Metal–Matic management had known about it.

After reviewing the entire record in this case, we conclude there was adequate evidence to support the Commission's findings on Metal–Matic's termination of Deerson's employment. While it is a close issue, we will defer to the Commission's expertise in this area and its experience in dealing with matters such as this. *Reserve Mining*, 256 N.W.2d at 824.

## II.

■ Deerson attacks the union's failure to grieve on several grounds. First, he contends the Commission erred in finding the letter of grievance was not in the proper form. This contention has merit. George Behr testified the grievance form is filled out by the shop steward or a member of the shop committee, not the grievant. That being the case, the form of Deerson's letter would not be important.

The second contention is that Deerson's decision to take a voluntary quit does not bar a grievance if he changes his mind and timely files a grievance. This contention is also supported by the record. Behr testified he had allowed other employees to change their minds and file a grievance.

Although Deerson's contentions have merit, they do not require reversal. The Commission found that Deerson had failed to establish a prima facie case of discrimination. Specifically, the Commission found no member or officer of Local 970 knew Deerson had any disability prior to receipt of his letter of grievance. Deerson has not shown this finding to be clearly erroneous. Absent some showing of discriminatory intent, which would require knowledge of the handicap, a prima facie case does not exist. *See Butler*, 595 F.Supp. at 1067–68.

Pursuant to Minn.R.Civ.App.P. 139.05, any award to Metal–Matic of its disbursements in this case shall not include the cost of including, in the appendix to its brief, case law readily available to this court. *See* Minn.R.Civ.App.P. 130.01 (detailing

what materials an appendix should contain).

## DECISION

The Commission's findings are supported by the evidence.

Affirmed.