# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2109

_____

Derald Richey,

        Appellant,

    v.

City of Independence; Debra Craig,

        Appellees.

\*
\*
\*
\*
\* Appeal from the United States
\* District Court for the
\* Western District of Missouri.
\*
\*
\*

_____

Submitted: January 14, 2008
Filed: September 3, 2008

_____

Before COLLOTON and SHEPHERD, Circuit Judges, and ERICKSON,[1] District Judge.

_____

COLLOTON, Circuit Judge.

Derald Richey was terminated by the City of Independence, Missouri, in May 2004. Richey sued the City and his human resources director, Debra Craig, under Title VII and 42 U.S.C. § 1983. Richey later dropped the Title VII claim and added

_____

[1]The Honorable Ralph R. Erickson, United States District Judge for the District of North Dakota, sitting by designation.

a claim under the Missouri Human Rights Act (MHRA). The district court[2] granted summary judgment for the City on both remaining claims. *Richey v. City of Independence*, No. 04-0823-CV-W-HFS, 2007 WL 1101207 (W.D. Mo. April 12, 2007). We affirm.

I.

Richey worked for the City of Independence from 1985 until May 2004 as a park ranger. The City terminated his employment in May 2004, asserting that Richey had violated the City's personnel policies. The termination precipitated this lawsuit.

The events leading to the termination began in March 2004, when Connie Knott, a park naturalist, complained to her supervisor, Susan Reynolds, that Richey had become angry with her over matters relating to park policy. Knott later told Reynolds that she felt threatened by Richey's temper, and requested an alternate workspace away from the park.

At about the same time, Richey called a human resources coordinator, Cleon Wiggins, and asked for a meeting to say "some things that needed to be said." According to Wiggins's report of the call, Richey first asked to meet with Reynolds, Knott and Wiggins, or just Wiggins, to discuss his relationship with Knott. Richey explained to Wiggins that Knott had inquired whether Richey had a girlfriend, and had engaged in affectionate contact such as hugging or placing her head in his lap. Richey told Wiggins that he recently told Knott that he did not like the physical contact, and that she agreed to cease that behavior. According to Wiggins, Richey said "very emphatically" that he did not want to make a claim of sexual harassment, and that he wanted only to "clear the air." In a meeting with Reynolds and Wiggins the next day,

---

[2]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

Richey alleged that Knott had made inappropriate comments of a sexual nature to him, that Knott had hugged him on at least two occasions, and that she had once showed up at his house unannounced on a Sunday morning to take him to church.

Wiggins and Reynolds conducted an investigation into Richey's allegations about Knott, and determined that they were unsupported. Knott denied that she had made sexual comments to Richey. She also told Reynolds that Richey had asked her to take him to church. She gave Reynolds a map that Richey had drawn for her to show her the way to his house. When Jim Fisher, the Parks and Recreation Director, told Richey that his allegations against Knott were unsubstantiated, Richey was distraught and told Fisher, "I guess I was wrong for doing this." Richey later said that when he made this admission, he "was kind of being sarcastic in a way."

As part of the investigation, Fisher and others examined Richey's personnel file. They discovered several reports regarding previous angry outbursts by Richey, dating back to 1987. These included a documented suspension from work in August 1999 for violations of regulations concerning workplace violence after Richey threatened to kill himself and his wife, summaries of confidential interviews with employees in August 1999 recounting that Richey also had threatened to kill his supervisor, and a memorandum from another park employee in November 2002 regarding "violent verbal outbursts" and "paranoid behavior" by Richey.

On April 13, 2004, Fisher wrote to the city manager, Robert Heacock, summarizing his investigation and recommending that Richey be suspended pending termination for violations of two sections of the City's personnel policy. Fisher described incidents during March 2004 in which Richey became angry with Knott over various matters, and reported that Richey had made allegations of sexual harassment against Knott. Fisher's recommendation asserted that Richey violated city policy against "[f]iling a grievance or complaint against a city employee or officer, which the employee knows to be false," explaining that Richey's "allegations of

sexual harassment were found to be without merit after investigation." The recommendation also stated that Richey violated a personnel policy against "[t]hreatening, fighting with, intimidating, coercing, or abusing other employees," because Richey's "verbal intimidation and abuse of another employee served to create a hostile work environment at George Owens Nature Park."

Heacock approved this recommendation, and suspended Richey without pay for ten days on April 19, pending termination. Richey requested and was granted a hearing with a personnel board, comprised of five citizens of the City who were not city employees. Richey was present at the May 24 hearing along with his counsel, and he presented and cross-examined witnesses.

The personnel board found that Richey had committed the two violations of policy cited by Fisher, and approved Fisher's recommendation that Richey be terminated. The board specifically found that Richey "knowingly made false complaints and allegations against Ms. Knott," and, with respect to the second violation concerning intimidation or abuse of other employees, noted that Richey had previously been suspended for workplace violence issues. Heacock accepted this recommendation, and terminated Richey effective May 3, 2004.

Richey sued the City and its human resources director, Debra Craig, under 42 U.S.C. § 1983 for alleged violations of his constitutional rights. Richey also filed a claim under Title VII, but later dropped that allegation and added a claim under the Missouri Human Rights Act alleging unlawful retaliation. The district court granted summary judgment for the City and Craig, holding that neither the City nor Craig had violated Richey's constitutional rights, and that the City had not violated the MHRA.

-4-

II.

We review the district court's grant of summary judgment *de novo*, granting Richey all reasonable inferences without resorting to speculation. *Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 810 (8th Cir. 2005). We will affirm if the City has shown that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Richey first argues that he was fired for opposing sex discrimination made unlawful by the MHRA. The MHRA makes it unlawful for an employer to discriminate against any individual with respect to the terms, conditions, or privileges of employment because of sex. Mo. Rev. Stat. § 213.055. The statute further provides that it shall be an unlawful discriminatory practice "to retaliate or discriminate in any manner" against a person "because such person has opposed" sex discrimination forbidden by § 213.055. Mo. Rev. Stat. § 213.070(2). To prove a violation of the MHRA, a plaintiff alleging unlawful retaliation must prove (1) that he engaged in protected activity, and (2) that "as a direct result, he . . . suffer[ed] . . . damages due to an act of reprisal." *Keeney v. Hereford Concrete Prods.*, 911 S.W.2d 622, 625 (Mo. 1995) (en banc).

The retaliation prohibition in the MHRA parallels a similar provision under federal law in Title VII. Both statutes contains an opposition clause, which prevents employers from firing an employee for opposing an unlawful employment practice. Mo. Rev. Stat. § 213.070(2); 42 U.S.C. § 2000e-3(a). The prohibitions on retaliation in the MHRA and Title VII are not "identical in scope and purpose," *Keeney*, 911 S.W.2d at 625 n.1, but the differences between the statutes are not at issue here.[3] The

---

[3]The MHRA's provision on retaliation, unlike the parallel provision in Title VII, can be invoked by a plaintiff who is not employed by the defendant, even if the plaintiff's prospects for employment are not affected. *Keeney*, 991 S.W.2d at 624-26. There is no question that Richey was a city employee and that he was terminated.

relevant issue is whether Richey was fired "because [he] opposed any practice prohibited by [the MHRA]." Mo. Rev. Stat. § 213.070(2). We see no analytical difference between this prohibition, and the parallel prohibition in Title VII, which makes it unlawful to terminate an employee "because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). Thus, we may look to our precedents on retaliation in the Title VII context for guidance in evaluating Richey's claim under the MHRA. *See Carter v. Chrysler Corp.*, 173 F.3d 693, 700 n.5 (8th Cir. 1999); *Finley v. Empiregas, Inc.*, 975 F.2d 467, 473 (8th Cir. 1992); *cf. Cross v. Cleaver*, 142 F.3d 1059, 1074-76 (8th Cir. 1998) (holding that it was not plain error to issue a combined retaliation instruction on Title VII and the MHRA because there does not appear to be any "effective difference" between the participation clauses in the MHRA and Title VII.).

The district court concluded that Richey had not met the first element of a retaliation claim, because he had not engaged in protected activity. The court observed that Richey never complained of unlawful sex discrimination, and that by his own characterization, he merely sought to "clear the air" between himself and Knott. The court then concluded, alternatively, that even if Richey's conduct was protected, he failed to present a submissible case that the City terminated him because of his opposition to sex discrimination. Applying *Gilooly v. Mo. Dep't of Health and Senior Servs.*, 421 F.3d 734 (8th Cir. 2005), the court ruled that where there is no good reason to challenge the good faith of the employer's conclusion that the employee made false accusations, objective evidence that corroborates the conclusion of the evaluators is sufficient to justify a grant of summary judgment. The court further concluded that it was "entirely unlikely" that Richey could prevail in this case, because the record showed that "the dominant reason for the discharge was that the City had had enough personnel trouble with Richey, mostly related to insufficient anger control, and the failure to discharge him several years earlier, when it had been recommended, was apparently regretted by the new City Manager who took the final adverse action."

If we assume for the sake of argument that Richey had an objectively reasonable belief that his reports to city management about Knott were opposition to a violation of the MHRA, *see Evans v. Kansas City, Mo. Sch. Dist.*, 65 F.3d 98, 100 (8th Cir. 1995), we agree with the district court that there is no genuine issue for trial on the question whether the City terminated Richey because he opposed unlawful activity. Retaliation claims in which there is no direct evidence of discrimination typically are analyzed under the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See*, *e.g.*, *Culton v. Mo. Dep't of Corrections*, 515 F.3d 828, 830 (8th Cir. 2008). Under that approach, if a plaintiff makes a prima facie case of unlawful retaliation, then the employer must produce a legitimate, non-discriminatory reason for the employment action. If the employer does so, then the plaintiff has the burden of persuasion to show that the employer's proffered reason is a pretext for unlawful discrimination. *Id.*

The employer's proffered reason in this case was that Richey violated personnel policies of the City. An employee who engages in protected activity is not insulated from adverse action for violating workplace rules, and an employer's belief that the employee committed misconduct is a legitimate, non-discriminatory reason for adverse action. *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc). The normal rule in discrimination cases is that if an employer honestly believes that an employee is terminated for misconduct, but it turns out later that the employer was mistaken about whether the employee violated a workplace rule, the employer cannot be liable for discrimination. *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 637 (8th Cir. 2000). If the employer takes an adverse action based on a good faith belief that an employee engaged in misconduct, then the employer has acted because of perceived misconduct, not because of protected status or activity. "The relevant inquiry is whether the [employer] *believed* [the employee] was guilty of the conduct justifying discharge." *Scroggins v. Univ. of Minn.*, 221 F.3d 1042, 1045 (8th Cir. 2000) (internal quotation omitted). Therefore, a plaintiff seeking to avoid summary judgment under the *McDonnell Douglas* framework must demonstrate more than a

-7-

genuine issue of material fact as to whether the employee violated workplace rules. He must show a genuine issue of fact about whether the employer acted based on an intent to retaliate rather than on a good faith belief that the employee violated a workplace rule. *Id.*

This general proposition was tested in *Gilooly*. Our court reversed a grant of summary judgment in favor of a state agency that discharged an employee after determining that the employee falsely accused another employee of sexual harassment. In that case, the court said that an employer cannot legitimately fire every "employee who files a Title VII claim and is disbelieved." *Gilooly*, 421 F.3d at 740. But the court also said that a plaintiff cannot "file false charges, lie to an investigator, and possibly defame co-employees, without suffering repercussions simply because the investigation was about sexual harassment." *Id.* "Differentiating individual cases between the two extremes," said the court, "is a difficult endeavor at the summary judgment stage." *Id.*

*Gilooly* ultimately held that summary judgment was inappropriate on the facts presented there, because the employer's disbelief in the employee was "founded solely on the statements of other employees and witnesses," *id.* at 740, rather than on "independently verifiable evidence" or "independent corroboration . . . from neutral non-parties." *Id.* at 740-41 & n.2. The court stated that "[h]ad the investigator found a clearer record of deception and detailed the basis for such findings, a court could find that the firing was not for protected conduct." *Id.* at 741. The *Gilooly* court held that "the question" – that is, whether the firing was "for protected conduct" – was largely undeveloped in that case and "best left to a fact-finder to decide." *Id.*

We take this discussion in *Gilooly* to mean that when an employer is presented with a "he said, she said" set of facts involving two employees, and the employer chooses to disbelieve and discipline the employee who had engaged in protected opposition to unlawful activity, then the employee's claim of retaliation must go to a

jury. The jury must decide whether the employer took the adverse action because of a good faith belief that the employee made false accusations (in which case there is no liability, *see EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000)), or because the employee opposed unlawful activity (in which case the employer's conduct would violate Title VII or the MHRA). But where the employer proffers a good faith belief in misconduct that is supported by some independent corroboration, then the employee, to avoid summary judgment, must present additional evidence that the employer's explanation is pretextual, and that the employer really acted because of the employee's protected activity.[4]

In this case, the City presented the decision of its personnel board that Richey's report was false. Unlike the determination in *Gilooly*, which our court said was based only on the testimony of interested witnesses and the report of an investigator, the City's finding here was supported by independently verifiable evidence. One element of corroboration was documentary proof. Richey had asserted to city management that Knott had pursued him romantically, showing up at his house unannounced to attend church. Knott denied this allegation, stated that Richey had asked her to pick him up for church, and gave the City a map that she said Richey drew for this purpose. This documentary evidence bolsters the City's conclusion that Richey had falsely accused Knott of improper advances, and "that the church-going visit was consensual rather than uninvited stalking." *Richey*, 2007 WL 1101207, at *2. The City also relied on an admission from Richey, after he was confronted about making false accusations, that "I guess I was wrong for doing this." Despite Richey's later efforts

[4]This analysis is consistent with the district court's understanding of *Gilooly*: "The Circuit may ultimately adopt [the *Gilooly* dissenting opinion's] view that good faith beliefs of the employer should suffice, in defending retaliation claims. Short of that, I do not think the *Gilooly* majority insists on air-tight corroboration of a claim of false or knowingly exaggerated defamatory testimony. Corroboration, particularly in the form of documents that a complainant has difficulty in explaining, should suffice where there is no good reason to challenge the good faith of a conclusion based on investigation." *Richey*, 2007 WL 1101207, at *2.

to dismiss his admission as sarcasm, his statement against interest offers further corroboration for the City's good faith belief that Richey violated city policies by making a false complaint about another employee. The City's presentation here is thus distinguishable from *Gilooly*.

In addition to its conclusion that Richey made false allegations against Knott, the City proffered that it terminated Richey for a second reason, namely, his violation of a workplace policy against "[t]hreatening, fighting with, intimidating, coercing, or abusing other employees." The City's finding on this point was based on Knott's report concerning Richey's outbursts and her fear of working with Richey, as well as documentation showing that Richey had a history of making threats or violent verbal outbursts in the workplace. This history included a prior suspension from work in 1999 for violating workplace violence regulations. Richey has not presented evidence to suggest that the City's reliance on his angry outbursts was false or pretextual.

Richey does argue that even if the City legitimately believed that his allegations about Knott were false, the City's proffered reasons were nonetheless pretextual, because he did not file a formal complaint that would implicate the City's policy against "filing a false grievance or complaint." In other words, Richey says that he complained about Knott in a manner that qualified as protected opposition to sexual harassment under the MHRA, but that his complaint was not formal enough to run afoul of the City's policy against filing false complaints.

We reject this contention. It is generally for an employer to interpret its own policies, and the City determined here that Richey's "allegations of sexual harassment" constituted the filing of a false grievance or complaint against a city employee. (City App. 253). Even if the City has misapplied its own policy, moreover, that alone does not constitute evidence of discrimination. The City, like any employer, "can choose how to run its business, including not to follow its own personnel policies regarding termination of an employee . . ., as long as it does not

unlawfully discriminate in doing so." *Haas v. Kelly Servs., Inc.*, 409 F.3d 1030, 1036 (8th Cir. 2005) (internal quotations omitted). Richey points to no evidence that the City has applied its policy on false complaints arbitrarily or inconsistently, or that any person situated similarly to Richey was not disciplined for violating the policy.

For these reasons, Richey presented insufficient evidence that the City's finding that he violated the policies against false complaints and intimidating or abusing other employees was a pretext for unlawful discrimination. Accordingly, the district court's grant of summary judgment on the MHRA claim was proper.

Richey's constitutional claims under § 1983 merely restate his MHRA retaliation claims. They are not tied to any provision of the Constitution. We agree with the district court that the City did not violate Richey's constitutional rights.

The judgment of the district court is affirmed.

SHEPHERD, Circuit Judge, concurring in part and concurring in the judgment.

Richey's violation of the City's policy against intimidating or abusing other employees is an independent and legitimate basis for terminating his employment, regardless of whether he knowingly made a false complaint against another employee. Accordingly, I see no need to address the more difficult issue, whether this case is sufficiently factually distinguishable from Gilooly v. Mo. Dept. of Health & Senior Servs., 421 F.3d 734 (8th Cir. 2005). Rather, I would affirm the district court's grant of summary judgment on Richey's retaliation claims solely on the ground that Richey has failed to offer any evidence that the City's workplace intimidation justification was pretextual.

Here, the City proffered two reasons for Richey's termination: (1) his violation of the City's policy against false complaints and (2) his violation of the policy against

intimidating or abusing other employees. This court has not articulated a rule to be applied where an employer offers multiple nondiscriminatory reasons for an allegedly retaliatory employment action. I submit that the Seventh Circuit has correctly determined, "[W]hen a defendant has offered multiple nondiscriminatory reasons for [an alleged discriminatory action], showing that one of these reasons is pretextual is not enough, although there may be circumstances where 'multiple grounds offered by the defendant . . . are so intertwined, or the pretextual character of one of them so fishy and suspicious, that the plaintiff could withstand summary judgment.'" Fischer v. Avanade, Inc., 519 F.3d 393, 403-04 (7th Cir. 2008) (quoting Russell v. Acme-Evans Co., 51 F.3d 64, 70 (7th Cir. 1995)). The Third, Sixth, and Ninth Circuits have issued similar rulings. See Odima v. Westin Tucson Hotel Co., 991 F.2d 595, 600 (9th Cir. 1993) (vacating the judgment and remanding "[b]ecause [the district court's] finding that *one* of [the employer's] proffered reasons was pretextual does not in itself support the district court's ultimate conclusion that [the employer] had discriminated against [the employee]"); Logue v. Int'l Rehab. Assocs., Inc., 837 F.2d 150, 155 (3rd Cir. 1988) (finding that "if an employer articulates several alternative and independent legitimate, nondiscriminatory reasons, the falsity of one does not necessarily justify finding the remaining articulated reasons pretextual."); Cooley v. Carmike Cinemas, Inc., 25 F.3d 1325, 1329 (6th Cir. 1994) (holding that "[w]here two or more alternative and independent legitimate, nondiscriminatory reasons are articulated by the defendant employer, the falsity or incorrectness of one may not impeach the credibility of the remaining articulated reason(s)." (quoting Sims v. Cleland, 813 F.2d 790, 793 (6th Cir. 1987))).

This approach is sound because "it is not merely the falsity or incorrectness of the articulated reason that gives rise to the conclusion of pretext" but "the resulting absence of legitimate explanation for the suspect employment decision that warrants the finding of discrimination." Sims, 813 F.2d at 793. When an employer proffers multiple nondiscriminatory justifications for an allegedly retaliatory action, a showing of pretext as to one does not necessarily "result[] [in the] absence of [a] legitimate

-12-

explanation . . . ." See id. Such a showing would only be sufficient if the remaining nondiscriminatory reason(s) are tied to the invalid reason. See Fischer, 519 F.3d at 404; Russell, 51 F.3d at 70.

Applying the Seventh Circuit's rule here, in order for this court to find that the district court's grant of summary judgment on Richey's retaliation claims was improper, Richey must make a showing of pretext with respect to both of the City's reasons unless the reasons are not sufficiently independent. See Fischer, 519 F.3d at 404; Russell, 51 F.3d at 70. I agree with the majority that Richey has provided no evidence that the angry outbursts reason is not to be believed. See ante at 10. Furthermore, these facts do not run afoul of the independence requirement. See Fischer, 519 F.3d at 404; Russell, 51 F.3d at 69-70. Admittedly, Connie Knott is both the subject of Richey's sexual harassment allegation and the one who reported Richey's angry outburst that played a part in his termination. However, Richey had a long and serious history of anger control issues preceding Knott's report in March 2004, including a similar complaint from Knott's predecessor in 2002 and a 1999 incident in which Richey allegedly threatened to kill himself, his wife, and his supervisor. In light of Richey's history, Jim Fisher, the City's Parks and Recreation Director who recommended Richey's termination, stated that he would have done so, even absent Richey's allegedly false accusation. Therefore, I would affirm the district court's grant of summary judgment on the retaliation claims but only on the ground that Richey presented insufficient evidence that his termination for violating the City's policy against intimidating other employees was a pretext for discrimination.

I concur in part and concur in the judgment.

_____