# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2544

_____

Taron Colenburg,

        Appellant,

v.

STARCON International, Inc.,

        Appellee.

\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  District of Minnesota.
\*
\*
\*

_____

Submitted:  May 12, 2010
Filed:  August 31, 2010

_____

Before WOLLMAN, SMITH, and COLLOTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Taron Colenburg appeals from the district court's[1] grant of summary judgment to STARCON International, Inc. (Starcon) on his claims of race-based employment discrimination, reprisal, and hostile work environment under the Minnesota Human Rights Act (MHRA), Minn. Stat. § 363A.01, and on Starcon's counterclaim for repayment of an advance for relocation expenses.  We affirm.

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

I.

Because this is an appeal of a grant of summary judgment for Starcon, we state the facts in the light most favorable to the non-moving party, Colenburg.

Colenburg, who is African-American, worked at Starcon from November 2005 to April 2008. Starcon is based in Illinois and performs contract maintenance work at oil refineries, including Marathon Ashland Petroleum Company's refinery in St. Paul, Minnesota, where Colenburg worked as a mechanic apprentice and scaffold builder.

In July 2006, Colenburg entered into a relocation agreement with Starcon, under the terms of which Colenburg received $12,000 for relocation and job-transition expenses. The agreement also provided that Colenburg would be liable to repay the $12,000 advance if he did not remain with Starcon for at least two years after signing the agreement. This obligation to repay was subject only to two exceptions: if either the employee was discharged because of a "reduction in force" or the employee quit because the pay for their position was cut, they would not have to repay the advance.

During his time at Starcon, Colenburg generally received favorable reviews and steady promotions. While Colenburg was employed at the St. Paul site, his supervisor was Clayton Holznagel. Initially, Colenburg's foreman was Brandon Wallheimer. Wallheimer resigned in August 2007 and was replaced as foreman by Cesar Huerta, who in turn was replaced as foreman by Kristian Olsen in January 2008.

Colenburg testified regarding several racial comments that were made during his employment. In March 2006, Wallheimer spoke with Colenburg about a job that Colenburg had just finished. Wallheimer felt that Colenburg had taken too much time to complete the job, laughed and said, "You were dragging like that man down in Texas whose head was getting drug—and his body is getting drug and his head

popped off." Appellant's Appx. at 71. Colenburg understood Wallheimer to be referencing the lynching of James Byrd, during which Byrd was dragged behind a pickup truck until he was decapitated. Appellant's Br. at 8 n.3. Colenburg expressed his displeasure at the remark and Wallheimer apologized for making it. In May 2006, Colenburg asked Wallheimer about why he and James Andrews, another African-American employee, were not receiving raises and promotions. According to Colenburg, Wallheimer replied, "Do you know any, you know, black leadmen?" Appellant's Appx. at 71. According to Colenburg, on another occasion Wallheimer said to him, "[Y]ou black guys up North, you guys speak boldly, but down South you don't act that way; down South, it's differently [sic]." Id. at 72.

Jesus Narro was Colenburg's co-worker from November 2005 to March 2007 at the work site. After Narro's employment ended, he brought a claim of racial discrimination against Starcon. After Narro's claim was filed, Wallheimer told a group of employees, including Colenburg, that he thought Narro's claim "was some BS" and asked the employees whether any of them agreed with the claim. Colenburg later stated that he thought that Wallheimer was trying to intimidate the employees by declaring in their presence that Narro's claim was "BS." Id. at 102. According to Colenburg, Wallheimer assigned the more difficult and dangerous jobs to African-American and Hispanic workers.

In October 2006, Colenburg complained to Jeff Sutton, the human resources manager for maintenance, and Reggie Williams, Vice President, that he was being subjected to racial discrimination. Colenburg told Williams that he was being passed over for raises while his "white co-workers had gotten raises." Id. at 92. Williams responded that it sounded like "blatant racism" to him, told Colenburg not to "worry about it," and said that he would speak to Sutton about the matter. Id. Sutton was based in Chicago, but he traveled to the work site to interview Colenburg. The two had lunch and Sutton took a full report of Colenburg's complaints. Sutton said that he would look at the matter and respond. Sutton and Colenburg have not

communicated since the lunch meeting. Colenburg stated that he was unaware of what action was taken in response, but that he had learned that the company spoke to Wallheimer about the complaint. In December 2006, Colenburg complained to Marc Daigle, superintendent, about the promotion of a recently hired white mechanic. Colenburg told Daigle, "This is blatant racism. You haven't reached out to anyone who is a minority." Daigle responded that it was not racism, that he did not have to explain the situation to Colenburg, and that the promoted worker had "been working hard." Id. at 85.

In January 2008, Huerta was unable to work for one week because of a family emergency. Holznagel temporarily promoted Olsen, a recent hire who was white, to replace Huerta. Colenburg became upset and confronted Holznagel about the promotion in the presence of other employees. Holznagel stated that Colenburg became very aggressive, waved his arms, and yelled. Id. at 125. In response, Holznagel suspended Colenburg for one day without pay "for his inappropriate behavior and abusive outburst towards the Project Manager, his supervisor and his fellow Team Members." Id. at 182. Holznagel warned Colenburg that any further violations of Starcon's polices would result "in further disciplinary action up to, and including, termination of employment."

Holznagel contacted Starcon's human resources department for assistance in permanently filling the vacancy left by Huerta. In his email to human resources on January 16, 2008, Holznagel said that he had a few candidates in mind, but thought it best to post the vacancy so that it would not appear as if he was "playing favorites." The following morning, Holznagel promoted Olsen on a permanent basis without posting the position. Id. at 127. Holznagel stated that he felt Olsen was qualified in light of his military leadership experience and his recent performance as Huerta's replacement, despite Olsen's admitted fear of heights and the challenge that it posed when working on high scaffolding. Id. at 79-80, 147. Holznagel also stated that he believed that Colenburg wanted to be a planner, rather than a foreman. After the

decision to promote Olsen was announced, Colenburg spoke with the safety manager, Rick Boxford. Boxford told Colenburg that he thought the promotion of Olsen was "blatant" discrimination and gave him a card for a lawyer.

In April 2008, Colenburg had a dispute with Chris Mishkee, the maintenance foreman at the time. By radio, Colenburg requested a laminated copy of the safety manual. Colenburg later stated that the paper copies deteriorated, and he felt that he needed a laminated copy to assist with the training of a new employee. In a loud and aggressive manner, Mishkee responded that Colenburg already had an unlaminated copy of the manual and that he should "get to work." Id. at 97. Colenburg felt that Mishkee's response was disrespectful and insulting; Colenburg reacted by raising his voice over the radio. Id. Mishkee replied that Colenburg should leave the job site and come back to the shop; Colenburg responded that Mishkee should come out and meet him at the job site. Id.

Shortly thereafter, Colenburg was summoned to the shop and was met by Mishkee, Olsen, Holznagel, Boxford, and Stoney Strickland, another supervisor. Holznagel and Boxford stated that they had heard the altercation on the radio. Colenburg began to explain that he was under stress, but Olsen cut the conversation short and said, "You're fired." Colenburg shook hands with his supervisors and left.

## II.

"We review a district court's grant of summary judgment de novo, reading the record in a light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences drawn from the record." Turner v. Honeywell Fed. Mfg. & Tech., LLC, 336 F.3d 716, 719-20 (8th Cir. 2003). "Summary judgment is granted appropriately in cases in which one party has failed to present evidence sufficient to create a jury question as to an essential element of its

claim." Id. at 720. As our court has previously cautioned, summary judgment, however, should be used sparingly in employment discrimination cases. Id.

Under the burden shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973), the plaintiff has the initial burden of establishing a *prima facie* case of discrimination based upon race. Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1107 (8th Cir. 1998). If he can establish such a case, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Id. "Once the employer articulates such a reason, the presumption of discrimination disappears entirely and the plaintiff bears the burden of proving that the employer's proffered reason is merely a pretext for discriminatory animus." Id.

## A. Failure to Promote

To succeed on his failure to promote claim under the MHRA, Colenburg may either present direct or circumstantial evidence of discrimination, adjudged through the McDonnell Douglas framework. Diez v. Minnesota Mining and Mfg., 564 N.W.2d 575, 579 (Minn. Ct. App. 1997). Colenburg lacks direct evidence that Starcon's failure to promote him was due to racial discrimination. To establish a *prima facie* case with circumstantial evidence under McDonnell Douglas, Colenburg must show that (1) he was a member of a protected class, (2) he was meeting his employer's legitimate job expectations, (3) he suffered an adverse employment action, and (4) he was treated differently than similarly situated employees that were not class members. Norman v. Union Pac. R.R. Co., 606 F.3d 455, 461 (8th Cir. 2010).

Colenburg made a *prima facie* showing, and thus the burden shifted to Starcon to articulate a legitimate, non-discriminatory reason for promoting Olsen. Starcon met this burden: Olsen had managerial experience and had performed well in his temporary assignment to the position. Thus, the burden shifted back to Colenburg to

show that this reason was merely a pretext for racial discrimination. This Colenburg cannot do. He lacks evidence suggesting that Holznagel's decision to promote Olsen was based upon race; he cannot establish that Holznagel was motivated or inclined to engage in racial discrimination. Although it might have been better to post the job, a prompt decision was needed to fill the unexpected vacancy. Olsen, despite his stated fear of heights, was able to perform the job, as he had recently demonstrated.

Colenburg cites <u>Stallings v. Hussmann Corp.</u>, 447 F.3d 1041, 1052 (8th Cir. 2006), for the proposition that he may establish that Holznagel's stated reason for promoting Olsen was pretext for racial discrimination by "either directly persuading the court that a discriminatory reason [more] likely motivated the employer *or* indirectly showing that the employer's proffered explanation is unworthy of credence." Appellant's Reply Br. at 22. We are neither persuaded that a discriminatory reason more likely motivated the promotion decision, nor are we convinced that Starcon's proffered explanation is unworthy of credence. While Colenburg had more experience at the job site than Olsen, the evidence does not suggest that Olsen was not a reasonable candidate for the promotion. Accordingly, Colenburg has not presented sufficient evidence suggesting that Starcon's stated reason for its failure to promote him was pretext for racial discrimination; and thus he has failed to establish a material question of fact for a jury.

## B. Termination

To succeed on his termination claim under the MHRA, Colenburg may either present direct or circumstantial evidence of discrimination. He lacks direct evidence of racial discrimination, and thus he must show that (1) he was a member of a protected class, (2) he was qualified for his position, (3) he was fired, and (4) he was replaced by a non-class member or similarly situated non-class members were not fired for equivalent conduct. <u>Deerson v. Metal-Matic, Inc.</u>, 423 N.W.2d 393, 396 (Minn. Ct. App. 1988).

Like the district court, we conclude that Colenburg cannot make a *prima facie* showing because he has failed to show that a similarly situated non-class member was not fired for equivalent conduct. While Colenburg asserts that some white workers were drunk on the job, used profanity and yelled at times, none of these employees were reported to have engaged in altercations with their supervisors in front of other employees in the manner that Colenburg did. Colenburg had been previously warned about such behavior and suspended for one day. He can show no other non-class members that were not fired for doing the same things, and thus his claim must fail at the outset.

Colenburg points to a supposed comment made by Olsen immediately after Colenburg's termination. According to Colenburg, Robert Duffy, a co-worker, told him that Olsen had pointed at James, an African-American employee, and said, "That nigger is next," suggesting that Olsen was intent on reducing the number of non-white workers at the job site. The district court did not consider the comment because it held that although Olsen's statement could be admitted as an admission of a party opponent, Duffy's constituted inadmissible hearsay. D. Ct. Op. at 22 n.11. We agree. Olsen's statement was nonhearsay, because it was offered not to prove the truth of the matter asserted—that James was actually next to be fired—but rather to show that racial animus existed in the workplace. In contrast, Duffy's statement was hearsay, offered to prove that Olsen had actually said that James was next to be fired, not subject to any exception allowing admission. Accordingly, the district court properly disregarded the statement when considering Starcon's motion for summary judgment. See Mays v. Rhodes, 255 F.3d 644, 648 (8th Cir. 2001) (court looks only to evidence that will be admissible at trial when considering motion for summary judgment); Bersch v. Rgnonti & Assocs., Inc., 584 N.W.2d 783, 788 (Minn. Ct. App. 1998) ("The district court must disregard inadmissible hearsay evidence on a motion for summary judgment.").

## C. Reprisal

Colenburg asserts that there is a genuine issue of material fact as to whether Starcon retaliated against him for complaining about discriminatory treatment. To establish a *prima facie* case of reprisal under the MHRA, an employee must show that (1) he engaged in protected activity, (2) the defendant took adverse action against him, and (3) that there is a connection between the two. Hoover v. Norwest Private Mortgage Banking, 632 N.W.2d 534, 548 (Minn. 2001); see also Macias Soto v. Core-Mark Intern., Inc., 521 F.3d 837, 841 (8th Cir. 2008). "A reprisal claim is analyzed under the McDonnell Douglas burden-shifting test." Hoover, 632 N.W.2d at 548.

At the outset, Colenburg cannot establish a *prima facie* case of reprisal. Despite his stated suspicions, he cannot show that there was a connection between his complaints and the adverse actions taken against him, which included failure to promote and eventual termination. Colenburg has failed to produce evidence suggesting that his complaints about discriminatory treatment were a factor in Holznagel's decision to promote Olsen. Holznagel's stated justification was based upon Olsen's qualifications and Colenburg's supposed desire for another job. There is no evidence that Holznagel acted based upon Colenburg's complaints. Likewise, Colenburg has not established that his discharge on the grounds of insubordination was related to his complaints. Accordingly, Colenburg's claim fails because he has failed to present facts that could make a *prima facie* showing of reprisal. The district court did not err in granting summary judgment to Starcon on this issue.

## D. Hostile Work Environment

To survive summary judgment on a hostile work environment claim under the MHRA, the plaintiff must show that (1) he is a member of a protected group, (2) he was subjected to unwelcome harassment, (3) the harassment stemmed from his membership in a protected group, (4) the harassment affected a term, condition, or privilege of his employment, and (5) that his employer knew or should have known about the harassment and failed to take appropriate remedial action. Goins v. West Group, 635 N.W.2d 717, 725 (Minn. 2001). To be actionable, the harassment in question must be so severe or pervasive as to alter the conditions of the plaintiff's work environment such that a reasonable person would find it hostile or abusive. Id. Moreover, the plaintiff must perceive the environment as being hostile or abusive. Id. To determine whether an environment is hostile or abusive to support a claim, the court looks to the totality of the circumstances, including the frequency and duration of the conduct at issue, the severity of the conduct, whether it was physically threatening, and whether it unreasonably interfered with the plaintiff's work performance. Id.

The evidence of improper conduct amounted to three comments made to Colenburg and one comment made to a group of workers. The first comment that Wallheimer made in 2006 analogized Colenburg's pace of work to the speed at which an African-American man in Texas had been dragged to death behind truck. Colenburg expressed his disapproval of this comment and Wallheimer apologized. The second comment contrasted the demeanor of African-Americans from the north and south, offensively suggesting that the behavior of African-Americans could be generalized about in such a way and ascribing boldness to the former and relative docility to the latter. The third comment suggested that Colenburg had not been promoted because African-Americans were not in leadership positions at that job site. The last comment was made by Wallheimer to a group of employees, dismissing Narro's discrimination claim as "BS."

-10-

The three comments should not have been made. The last comment made to the group of employees regarding Narro's suit was unfortunate, but not patently racially offensive. All of the comments, however, were made briefly by an individual employed for only a portion of Colenburg's tenure. None of the comments were repeated. There is no evidence that they interfered with Colenburg's work performance or were physically threatening. While Colenburg points out that other workers reported racial epithets being said to them, Colenburg admits that none were addressed to him. However deplorable, the conduct at issue was not so severe or pervasive that it could be held to support a hostile work environment claim. Thus, the district court did not err in granting Starcon summary judgment on this issue.

## E. Counterclaim for Repayment of Moving Expenses

Under the terms of the relocation agreement, Colenburg was liable to repay Starcon the $12,000 advance that he received if he did not complete two years of employment after signing the agreement, subject to two exceptions which do not apply. He signed the agreement in July 2006 and left the company in April 2008. Colenburg's only defense to enforcement of the contract is that he "was terminated in retaliation for complaining about law violations." As discussed above, we reject this interpretation of Colenburg's termination. Colenburg was fired for insubordination after he shouted at a supervisor over the radio, having been previously warned about similar behavior. There is no genuine issue of material fact as to Colenburg's liability under the relocation agreement. Accordingly, the district court did not err in granting Starcon summary judgment on its counterclaim.

III.

The judgment is affirmed.

-11-

SMITH, Circuit Judge, dissenting.

I would hold that Colenburg made a submissible case on his failure to promote claim under the MHRA and therefore respectfully dissent.

The majority concludes that Colenburg made a prima facie showing by circumstantial evidence that Starcon discriminated against him. I agree. I would go further and also hold that he supplied sufficient evidence to make the issue of Starcon's possible pretext a question for the jury. Starcon posited Olsen's managerial experience as its nondiscriminatory reason for promoting him instead of Colenburg. Thus, Colenburg was obligated to produce evidence that Starcon's reason, Olsen's experience, was not its true reason but a pretext for discrimination. *Dixon v. Pulaski County Special Sch. Dist.*, 578 F.3d 862, 868 (8th Cir. 2009).

Colenburg can meet this obligation by showing Starcon's explanation lacked credibility or by showing Starcon was more likely motivated by a prohibited reason. *Id.* at 869. Here, Holznagel promoted Olsen from laborer to foreman after only four months on the job based on generic leadership experience. Colenburg had been on the job for more than two years, received training, gotten specific leadership experience and positive performance reviews in the job area at issue. The Starcon decision-maker, Holznagel, did not post the position to give Colenburg an opportunity to seek it.

Also, Holznagel made a statement in an email which raises concern about the objectivity of his hiring decision and the process used. The day before the decision he stated, "By having HR's involvement it would not look like [I am] playing favorites, yet I would be involved in the process." (App. 185). This statement is at best ambiguous and is susceptible to an interpretation less than favorable to Starcon. To be sure, Colenburg's case lacks indisputable direct evidence of discrimination. But such is not required. *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004). Together with the evidence put forth in his prima facie case, Colenburg's additional

-12-

evidence on possible pretext, when reviewed with favorable inferences as it must be on summary judgment, is sufficient to warrant a trial. Because I would reverse on this issue, I also would reverse on Starcon's counterclaim.

_____