# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2414

_____

| | | |
|---|---|---|
| Dolores L. Chivers, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| Chestine Clay, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Wal-Mart Stores, Inc., doing | * | |
| business as Wal-Mart, doing | * | |
| business as Wal-Mart Associates, Inc., | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted: February 17, 2011
Filed: June 9, 2011

_____

Before LOKEN, MELLOY, and SHEPHERD, Circuit Judges.

_____

MELLOY, Circuit Judge.

Wal-Mart Stores, Inc. ("Wal-Mart") terminated Chestine Clay in September of 2006. Clay sued Wal-Mart under the Minnesota Human Rights Act ("MHRA"), alleging that Wal-Mart terminated her and took other adverse employment actions

against her because she made complaints of discrimination. The district court[1] granted summary judgment in favor of Wal-Mart. Clay appeals, and we affirm.

## I. Background

Clay, an African-American woman, began working for Wal-Mart at a Mississippi store in 2002. She completed the company's management training program and became an assistant manager at a Fridley, Minnesota store in 2003. In 2005, Clay became the manager of the Vision Center at a Bloomington, Minnesota store. As manager, Clay was responsible for handling the Vision Center's budget, inventory, and personnel.

Shortly after becoming manager in 2005, Clay felt two other Wal-Mart employees had discriminated against her because of her race. Specifically, according to Clay, an employee named LaRae "yelled at" her for "retrieving documents from [a] printer" and another employee named Tina refused to process claims that Clay submitted regarding the Vision Center's damaged goods. Clay believed these were instances of race-based discrimination and reported them to Curtis Knipp, the Bloomington store manager, and Becky Fritz, the district manager who was Clay's immediate supervisor.

Knipp told Clay that he had spoken with LaRae and Tina regarding Clay's complaints, but, according to Clay, "nothing seemed to change" in LaRae's and Tina's conduct. Thus, on August 31, 2005, Clay filed a formal complaint of race discrimination with Dennis Davis, a Wal-Mart district manager. After interviewing Clay and speaking with LaRae and Tina, Davis told Clay that he did not believe she

---

[1] The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

had been the victim of race discrimination. Although Clay disagreed, she believed Davis's investigation resulted in an improvement in LaRae's and Tina's conduct.

Later, however, Clay believed LaRae and Tina had "resumed their inappropriate and discriminatory conduct against" her. Additionally, Clay believed that Knipp had discriminated against her by failing to provide certain assistance that Clay requested, by excluding Clay from management meetings, and by generally treating Clay with a lack of courtesy, such as by failing to greet her and by offering her a piece of candy from his mouth. Thus, at some point prior to July of 2006, Clay reported LaRae's, Tina's, and Knipp's allegedly discriminatory conduct to Fritz. Then, in July of 2006, Clay reported this conduct to Deb Thoennes, who had replaced Fritz as Clay's supervisor. According to Clay, however, Thoennes "was not interested in hearing about" Clay's discrimination complaints.

In August 2006, Thoennes investigated Clay's performance as the manager of the Vision Center. Four Wal-Mart employees who either worked with Clay or worked under her supervision gave written statements that criticized Clay's management skills, attitude, and customer service. After Clay again contacted Thoennes on August 22 to discuss LaRae's, Tina's, and Knipp's allegedly discriminatory conduct, Thoennes met with Clay around August 24 to discuss Clay's complaints and to discuss the concerns that Wal-Mart employees had raised regarding Clay's performance. On August 28, Thoennes disciplined Clay in writing for "Poor Customer/Member Service."

Around this time, Charlene Munson, one of the employees who Clay supervised, asked Clay to "give her a call to let [Munson] know how [Clay] was doing." On August 29, therefore, Clay called Munson at home during "nonworking hours." During the roughly hour-and-a-half long phone call, Clay and Munson talked about some personal issues and some "work-related issues." According to Munson, Clay said she was having a difficult time getting along with several of the employees

in the Vision Center. Additionally, according to Munson, Clay was troubled by the fact that several of her co-workers had written statements criticizing her performance.[2] It is unclear whether Clay knew during this phone call that Munson was one of the employees who had criticized Clay's performance.

On August 31, Clay again reported acts of alleged discrimination by LaRae, Tina, and Knipp. Many of Clay's allegations were similar to those she had previously made. Additionally, however, Clay claimed that Knipp had failed to timely replace light bulbs in the Vision Center and had failed to provide the Vision Center with storage space that Clay had requested. Clay discussed these allegedly discriminatory acts with Thoennes in a meeting that was held on August 31.

On September 4, Munson was having a conversation with Knipp in the Vision Center. During the course of the conversation, Munson mentioned the telephone conversation that she had with Clay on August 29. Upon hearing about the telephone conversation, Knipp informed Munson that she should be compensated for the time she spent talking on the phone with Clay. Thus, Munson wrote a statement regarding the nature of the August 29 phone call, submitted the statement to Knipp, and subsequently received compensation for her time.

On September 6, Thoennes met with Clay and discussed the August 29 phone call. Thoennes told Clay that the phone call had violated Wal-Mart's "Working Off The Clock" policy, which prohibits "supervisor[s] or manager[s] [from] request[ing] that Associates work off the clock." Essentially, employees work off the clock when they perform work without receiving compensation for the time they work. Thoennes then told Clay that because of Clay's policy violation, Thoennes was terminating her.

_____

[2] Clay does not dispute that she discussed these specific issues with Munson during the August 29 phone call.

-4-

On August 29, 2008, Clay and a co-plaintiff sued Wal-Mart in Minnesota state court.[3] Clay alleged that Wal-Mart had violated the MHRA by committing race and gender discrimination against her and by retaliating against her for making complaints of discrimination.[4] On September 26, 2008, Wal-Mart removed the action to the U.S. District Court for the District of Minnesota. On February 1, 2010, Wal-Mart moved for summary judgment. The district court granted Wal-Mart's motion on May 19, 2010.

Clay appeals the district court's grant of summary judgment in favor of Wal-Mart. Clay does not appeal the court's disposition of her race- and gender-discrimination claims. Rather, Clay argues that the district court erred in granting summary judgment in favor of Wal-Mart on her retaliation claims.

## II. Discussion

"We review a district court's grant of summary judgment de novo, reading the record in a light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences drawn from the record." Colenburg v. Starcon Int'l, Inc., 619 F.3d 986, 992 (8th Cir. 2010) (internal quotation marks omitted). "We will affirm if no genuine issue of material fact exists and the [movant] is entitled to judgment as a matter of law." Sandoval v. Am. Bldg. Maint. Indus., Inc., 578 F.3d 787, 792 (8th Cir. 2009).

---

[3] Dolores Chivers was the co-plaintiff who joined Clay's lawsuit. Chivers alleged that Wal-Mart had violated the MHRA by discriminating against her on the basis of her race and gender and by retaliating against her. The district court granted summary judgment in favor of Wal-Mart. Chivers initially appealed, but she has since settled her claims.

[4] Clay also asserted claims against Wal-Mart for failing to pay her over-time and past-due wages. Clay voluntarily dismissed these claims before the district court.

Clay argues that there is a genuine issue of material fact regarding whether Wal-Mart retaliated against her on several occasions for reporting alleged acts of discrimination. Under the MHRA, "'[a] reprisal claim is analyzed under the McDonnell Douglas[5] burden-shifting test.'" Colenburg, 619 F.3d at 994 (quoting Hoover v. Norwest Private Mortg. Banking, 632 N.W.2d 534, 548 (Minn. 2001)). "Under the McDonnell Douglas framework, an employee has the initial burden of establishing a prima facie case of retaliation." Fercello v. Cnty. of Ramsey, 612 F.3d 1069, 1077 (8th Cir. 2010). To establish a prima facie case of retaliation under the MHRA, "an employee must show that (1) [she] engaged in protected activity, (2) the defendant took adverse action against [her], and (3) that there is a connection between the two." Colenburg, 619 F.3d at 993.

Clay argues that on numerous occasions she engaged in protected activity by reporting alleged acts of discrimination. There is evidence that Clay reported acts of discrimination (1) to Knipp at some point before August 31, 2005, (2) to Davis on August 31, 2005, (3) to Fritz at some point before July of 2006, (4) to Thoennes in July of 2006, and (5) again to Thoennes on several days between August 22 and 31, 2006. Wal-Mart does not dispute that Clay's complaints of discrimination were protected activity. Thus, we will assume that Clay has established the first prong of her prima facie case of retaliation.

Under the second prong of her prima facie case, Clay argues that she suffered a number of adverse employment actions after her discrimination complaints. First, she argues that she suffered adverse employment actions when Knipp "treat[ed] her with disrespect," "refus[ed] to acknowlege her in common greetings," and "demean[ed] her by offering her a piece of candy he had in his mouth." We disagree with Clay that these are adverse employment actions. Generally, adverse employment action is "action that would deter a reasonable employee from making a charge of

_____

[5] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

-6-

employment discrimination or harassment." Fercello, 612 F.3d at 1077–78. However, "not everything that makes an employee unhappy is an actionable adverse action." Devin v. Schwan's Home Serv., Inc., 491 F.3d 778, 789 (8th Cir. 2007). Here, although Knipp's alleged actions may have been discourteous, they are not the sort of actions that would deter a reasonable employee from reporting discrimination.

Clay also argues that she suffered adverse employment actions when Knipp failed to "provid[e] her with assistance in the same manner he provided to other department managers" and when Knipp "exclud[ed] her from management meetings." Even if Knipp's alleged conduct constituted adverse employment actions, Clay has failed to show a causal connection between these actions and her protected activity. The record indicates that these adverse employment actions occurred sometime before Clay's fourth and fifth reports of discrimination. Thus, Knipp's conduct cannot be causally related to these reports. See Devin, 491 F.3d at 787 (indicating there can be no causal connection between adverse employment action and protected activity when the adverse employment action occurred before the protected activity). Clay's argument that Knipp's conduct is causally related to Clay's first, second, or third reports of discrimination is based upon the temporal proximity between the reports and the adverse employment actions. However, Clay has failed to produce evidence indicating that the temporal proximity between these actions and Clay's reports of discrimination was close. See, e.g., Arraleh v. Cnty. of Ramsey, 461 F.3d 967, 978 (8th Cir. 2006) (evidence indicating that a "period of three weeks" has passed between protected activity and adverse employment action "may suffice to establish causation"). Consequently, Clay has failed to establish a causal relationship between any of her protected activity and Knipp's failure to assist Clay or Knipp's exclusion of Clay from meetings.

Clay next argues that she suffered adverse employment actions when Thoennes and Knipp "secretly solicited written statements" from Clay's co-workers regarding Clay's performance after July of 2006 and when Thoennes issued Clay "an unjustified

discipline" on August 28 for poor customer and member service. Again, even if these were adverse employment actions, Clay has failed to show a causal connection between them and her discrimination complaints. Clay argues that there is a causal connection between her fourth and fifth reports of discrimination and these adverse employment actions because the actions occurred close in time to Clay's protected activity. We have stated, however, that engaging in protected activity does not "insulate an employee from discipline for violating the employer's rules or disrupting the workplace." Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999). Specifically, "[e]vidence that the employer had been concerned about a problem before the employee engaged in the protected activity undercuts the significance of temporal proximity." Herving v. Cnty. of Koochiching, 527 F.3d 711, 723 (8th Cir. 2008). This is a case where the significance of temporal proximity is undercut because the record indicates that Wal-Mart disciplined Clay for deficiencies in her management of the Vision Center on April 7, 2006, and for deficiencies in her customer service on June 6, 2006. Thus, in the circumstances of this case, Clay's evidence is insufficient to create a triable issue of fact regarding whether Wal-Mart investigated or disciplined Clay because she made her fourth and fifth reports of discrimination.

Finally, Clay argues that she suffered an adverse employment action when Wal-Mart terminated her. We assume that Clay has established a prima facie case of retaliation based upon her termination. Under the McDonnell Douglas framework, therefore, "the burden shifts to [Wal-Mart] to articulate a legitimate, non-retaliatory reason for its action." Fercello, 612 F.3d at 1078. Wal-Mart claims that Thoennes terminated Clay because Clay violated the company's working-off-the-clock policy by having a telephone conversation regarding work-related issues with Munson on August 29, 2006, during non-working hours. We have found that "an employer's belief that the employee committed misconduct" is a legitimate, non-retaliatory reason for the employer's action. Richey v. City of Independence, 540 F.3d 779, 784 (8th

Cir. 2008). Consequently, the burden shifts back to Clay to show that Wal-Mart's proffered reason is pretext for retaliation. <u>Fercello</u>, 612 F.3d at 1078.

Clay argues that Wal-Mart's proffered reason is pretextual because her phone call with Munson did not actually violate Wal-Mart's working-off-the-clock policy. However, "[i]nsofar as [Clay] argues there is a genuine issue of fact about whether she actually violated company policy and thus deserved to be [terminated], her argument is misdirected." <u>Alvarez v. Des Moines Bolt Supply, Inc.</u>, 626 F.3d 410, 416 (8th Cir. 2010). "The relevant inquiry is whether [Thoennes] *believed* [Clay] was guilty of the conduct justifying discharge." <u>Richey</u>, 540 F.3d at 784 (internal quotation marks omitted). This is because "[i]f the employer takes an adverse action based on a good faith belief that an employee engaged in misconduct, then the employer has acted because of perceived misconduct, not because of protected status or activity." <u>Id.</u>

Clay argues there is a triable issue of fact regarding whether Thoennes believed Clay violated the working-off-the-clock policy. Clay notes that Thoennes based her conclusion that Clay had violated the policy in large part upon Munson's statement regarding the nature of the August 29 telephone conversation. In the statement, Munson noted that Clay had talked about ongoing work-related issues, but Munson did not indicate that Clay had asked Munson to perform any particular work-related tasks during the conversation. Accordingly, Clay argues, Thoennes could not have honestly believed that Clay had violated the working-off-the-clock policy.

Clay essentially asks us to find that a phone conversation during non-working hours regarding work-related issues between a supervisor and an employee who she supervises does not violate a policy prohibiting "supervisor[s] or manager[s] [from] request[ing] that Associates work off the clock" and that any belief to the contrary cannot be honestly held. Clay's argument requires us to interpret an employer's policy, however, which we are generally reluctant to do. <u>See Richey</u>, 540 F.3d at 786 ("It is generally for an employer to interpret its own policies . . . ."). This is because

"[w]e do not sit as [a] super-personnel department[] reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination or unlawful retaliation." Logan v. Liberty Healthcare Corp., 416 F.3d 877, 883 (8th Cir. 2005) (internal quotation marks omitted).

Besides her own interpretation of Wal-Mart's policy, Clay presents no evidence indicating that Thoennes did not honestly believe that Clay had violated the working-off-the-clock policy.[6] The record indicates that when Thoennes met with Clay on September 6, Thoennes told Clay that her August 29 phone call had violated Wal-Mart's working-off-the-clock policy and that Thoennes was terminating Clay because of this policy violation. There is no evidence that in making this decision Thoennes interpreted or applied Wal-Mart's working-off-the-clock policy inconsistently. See Richey, 540 F.3d at 786 ("[The plaintiff] points to no evidence that the [employer] has applied its policy . . . arbitrarily or inconsistently, or that any person situated similarly to [the plaintiff] was not disciplined for violating the policy."); Twymon v. Wells Fargo & Co., 462 F.3d 925, 936 (8th Cir. 2006). Moreover, the record indicates that Thoennes made sure that Munson was compensated for the time she spent talking with

_____

[6] Clay argues that Thoennes could not have honestly believed that Clay violated the working-off-the-clock policy because Thoennes's investigation into Clay's violation was deficient. Specifically, Clay notes that Thoennes was informed of Clay's August 29 phone call by Knipp, who Clay suggests was incredible because she had repeatedly accused him of discrimination. Further, Clay notes that Thoennes never interviewed Munson regarding the August 29 phone call and that Thoennes did not interview Clay regarding the call until just before Clay's termination. We note that "[a]n internal investigation, like a judicial proceeding, often produces conflicting evidence and requires judgments about credibility and the weight to be given various pieces of information." Alvarez, 626 F.3d at 417. In this case, our review of the record indicates that Clay has not created a triable issue of fact regarding whether Thoennes's investigation prevented her from making a "reasonably informed and considered decision" prior to terminating Clay. Smith v. Chrysler Corp., 155 F.3d 799, 807 (6th Cir. 1998).

Clay on the phone, which is consistent with Thoennes's belief that Clay had violated the working-off-the-clock policy.  Thus, the record indicates that Thoennes honestly believed that Clay had violated the terms of the working-off-the-clock policy, and, in the circumstances of this case, Clay's own interpretation of the policy is insufficient to create a triable issue of fact regarding Thoennes's honestly held beliefs.[7]

Accordingly, Clay has failed to create a triable issue of fact regarding whether Wal-Mart retaliated against her for reporting alleged discrimination.  Therefore, the district court properly granted Wal-Mart summary judgment on Clay's retaliation claims under the MHRA.

### III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

LOKEN, Circuit Judge, concurring.

I join the opinion of the court.  I write separately to add an additional factor supporting the conclusion that Wal-Mart's stated reason for terminating Chestine Clay was not pretextual.  Walmart's Working Off The Clock policy is an important part of its efforts to comply with the federal Fair Labor Standards Act.  Based upon employee Charlene Munson's written report of what supervisor Clay said to Munson during the August 29 phone call, federal law required Wal-Mart to treat that call as requiring

---

[7] Clay also argues that Knipp and Thoennes investigated whether Clay violated the working-off-the-clock policy to retaliate against Clay for making reports of discrimination.  Since we find that Clay has failed to create a triable issue of fact regarding whether Thoennes terminated Clay in retaliation for Clay's protected activity, we also find that Clay has failed to create a triable issue of fact regarding whether Knipp and Thoennes investigated Clay in retaliation for Clay's protected activity.

Munson to work off the clock and to compensate Munson accordingly.  <u>See</u> 29 C.F.R. §§ 785.11-.12.

_____