**STATE of Minnesota, ex rel. Brian MARLOWE, petitioner, Appellant,**

v.

**Joan FABIAN, Commissioner of Corrections, Respondent.**

No. A08–0927.

Court of Appeals of Minnesota.

Sept. 16, 2008.

Lawrence Hammerling, Chief Appellate Public Defender, Richard A. Schmitz, Assistant Public Defender, St. Paul, MN, for appellant.

Lori Swanson, Attorney General, Ann K. Bloodhart, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by TOUSSAINT, Chief Judge; SHUMAKER, Judge; and STONEBURNER, Judge.

## OPINION

TOUSSAINT, Chief Judge.

This expedited appeal is from a district court order denying the petition of appellant Brian Marlowe for a writ of habeas corpus challenging his continued incarceration after he reached his supervised release date. Because respondent Joan Fabian, Commissioner of Corrections, has an obligation to fashion conditions of release that are workable and not impossible to satisfy, we reverse and remand for further proceedings consistent with this opinion.

## FACTS

Marlowe was sentenced in 2002 in Washington County to 108 months imprisonment for first-degree criminal sexual conduct. He reached his supervised-release date on December 6, 2007. As a level II sex offender, Marlowe was released on intensive supervised release (ISR). One of his conditions of release requires him to reside at an approved residence.

Several months prior to his scheduled release date, Marlowe made numerous attempts to secure suitable housing through classified advertisements, family, community agencies, and churches. But all attempts were unsuccessful, with some options falling through due to the possible presence of children. Marlowe's ISR agent also contacted two halfway houses in Stillwater, but neither would accept a level II sex offender.

Thus, when Marlowe was released from the Minnesota Correctional Facility in Rush City on December 6, 2007, he had no approved residence. On release, Marlowe was picked up by his ISR agent, who allowed him to cash a check, took him to eat at a fast-food restaurant, gave him the use of a cell phone, and provided him with a telephone book. Marlowe contacted two possible residences, but both rejected him. Marlowe also called his aunt, who lives in West St. Paul, but she declined to provide housing for him. When Marlowe told his ISR agent that he had no further options, the agent transported him to the Washington County jail.

Marlowe was thereafter charged with violating the conditions of his release, and a revocation hearing was held before a hearings and release unit (HRU) officer on December 18, 2007. Marlowe's ISR agent explained to the HRU officer that "the back up plan upon release was originally to send a supervision transfer to Ramsey County so that [Marlowe] could reside at [ReEntry Services] Eden where a bed had been previously approved for him," but that a Ramsey County ISR supervisor had rejected the plan. Marlowe's ISR agent, the HRU officer, and Marlowe's attorney each commented on the difficulty of finding a suitable residence for a sex offender placed on ISR in Washington County.

Marlowe's ISR agent, who is employed by the department of corrections (DOC) and supervises offenders in other metro-area counties, could not explain why he was not allowed to supervise Marlowe at a halfway house in Ramsey County. The agent indicated that he and his colleagues had "been given directives not to be supervising across county lines." Several statements were also made at the hearing to suggest that if Marlowe had been convicted in Anoka or Dakota County, he could have obtained placement at a halfway house in Ramsey County. Marlowe's attorney suggested that the HRU officer had the authority to allow Marlowe to reside in a DOC halfway house in another county and requested that Marlowe be transferred to such a facility. Marlowe's attorney further requested "restructure to a correctional halfway house."

The HRU officer found that Marlowe violated the terms of his release and that revocation was necessary because Marlowe "has no approved residence, and is a considerable risk to the public if he remains in the community with no housing" and that he "cannot be supervise[d] effectively if [he] has no residence." But the officer also admitted on the record: "I'd love to release you to a correctional half way house in another county, but I can't—my hands are tied."

On February 1, 2008, Marlowe filed a petition for a writ of habeas corpus, claiming deprivation of protected liberty interests because he was found in violation of an impossible condition. He further claimed that the DOC continued to violate his due-process rights by holding him in prison when halfway-house beds were available in neighboring metro-area counties. He requested that the district court immediately release him from custody to a DOC-funded halfway house. The district court denied Marlowe's petition, finding no due-process violations.

## ISSUE

Must the DOC consider a restructuring of Marlowe's release plan?

## ANALYSIS

■ On review of an order denying a petition for a writ of habeas corpus, this court gives great weight to the district court's findings of fact and will uphold the findings if they are reasonably supported by the evidence. *Northwest v. LaFleur*, 583 N.W.2d 589, 591 (Minn.App.1998), *review denied* (Minn. Nov. 17, 1998). Questions of law, however, are reviewed de novo. *State ex rel. Guth v. Fabian*, 716

N.W.2d 23, 26 (Minn.App.2006), *review denied* (Minn. Aug. 15, 2006). In general, this court will review the decision to revoke an offender's release for a clear abuse of discretion. *Id.* at 27.

■ A writ of habeas corpus is a statutory civil remedy available to obtain relief from unlawful imprisonment or restraint. Minn.Stat. § 589.01 (2006); *Loyd v. Fabian*, 682 N.W.2d 688, 690 (Minn.App.2004), *review denied* (Minn. Oct. 19, 2004). "A writ of habeas corpus may also be used to raise claims involving fundamental constitutional rights and significant restraints on a defendant's liberty or to challenge the conditions of confinement." *Guth*, 716 N.W.2d at 26–27.

■ An inmate in Minnesota has a liberty interest in his or her supervised release date that is protected by due process. *See Carrillo v. Fabian*, 701 N.W.2d 763, 773 (Minn.2005) (holding that DOC hearing officer must find by preponderance of evidence that offender committed disciplinary offense before date of supervised release can be extended). In general, due process requires notice and a meaningful opportunity to be heard before a fair and impartial decisionmaker. *See Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972) (discussing due-process requirements for parole-revocation proceedings).

Marlowe argues that the DOC violated his due-process rights by finding him in violation of his conditions of release, by revoking his supervised release, and by not releasing him into the community on his release date but instead taking him to the Washington County jail.[1] But as the com-

---

1. Marlowe also asserts his due-process rights were violated because the evidence established that his violation was not intentional or willful and because compliance with the con-

dition that he find a suitable residence was impossible. Marlowe cites the standard applied by the district courts in probation-revocation hearings, in which a violation must be

missioner notes, there is a key difference between Marlowe's imprisonment for the underlying offense and the confinement that he is currently experiencing; namely, if he can find an approved residence, he will be released.

By statute, the DOC must release offenders after they serve their term of imprisonment and must supervise offenders during their period of supervised release. Minn.Stat. §§ 244.101, subds. 1, 2; 244.05, subd. 1; 243.05, subds. 2, 6 (2006). Marlowe asserts that in order to fulfill these responsibilities, the DOC must assist an offender in finding suitable housing, or at least provide an offender with a workable release plan that includes viable options for suitable housing. Marlowe claims that the DOC has shifted its responsibilities to offenders by requiring them to develop their own workable release plan.

The commissioner counters that the DOC has broad authority to impose conditions upon a predatory offender who is placed on ISR and released into the community. Minn.Stat. § 244.05, subd. 6. The commissioner asserts that the DOC is under no obligation to "omit such conditions merely because an offender cannot find a suitable residence outside of prison."

But the DOC's own policies and rules suggest that it has an obligation to assist an offender in finding residential placement. Minnesota Department of Corrections policy 203.010 C.2., which is entitled "Release Planning," requires an offender's

case manager to "establish and document the jurisdiction where the initial request for agent will be sent" and requires that specific "release criteria must be addressed in ... sequential order." The last release criterion states:

> If the offender has none of the community support systems or options listed in a) through d) above [which include a confirmed residence and confirmed employment in the county or a previous significant historical involvement within the county prior to conviction], release planning will be the responsibility of the local corrections agency responsible for adult felons in the county from which the current commitment resulted. *If no practical residential placement option can be made in the county where the offender was convicted, the local corrections agency for adult felons in the county of commitment will arrange for housing and supervision.* This housing and supervision can occur within any county where it can be established and where the offender can most effectively be provided appropriate correctional programming.

Minn. DOC, Policy Number 203.010 § C.2.(d) (July 3, 2007) (emphasis added).

The commissioner asserts that policy 203.010 does not place a legal obligation on the DOC to find residential placement for Marlowe and "merely sets forth the order of priority for the criteria for the case

---

"intentional or inexcusable." *State v. Austin,* 295 N.W.2d 246, 250 (Minn.1980). But the *Austin* three-step analysis was adopted by the supreme court to offer "future guidance" to the district courts. *Id.* Violations of conditions of release involve administrative supervision, not judicial supervision. *See Kachina v. State,* 744 N.W.2d 407, 409 (Minn.App. 2008) (concluding that DOC has authority to determine whether to revoke conditions of supervised release, but that only district courts can impose conditions of probation).

Because the issue is not fully briefed by the parties, we decline to decide it. We note, however, that the supreme court recently indicated: "Due process requires that a defendant be given an opportunity to show that even if a condition of probation was violated, mitigating circumstances exist such that the violation does not warrant revocation." *State v. Cottew,* 746 N.W.2d 632, 636 (Minn.2008). The supreme court also stated that a "violation is mitigated where it was unintentional or excusable." *Id.*

manager to address in establishing and documenting the jurisdiction where the initial request for an agent will be sent." But policy 203.010 was not fully followed here. Indeed, the case-management process, the preparation of the release plan, and the jurisdiction of Marlowe's supervising agent all appear to be at the crux of the problem.

Marlowe claims that the DOC has "three funded halfway houses in the state [which] must be available to anyone being released from prison on supervised release needing placement, not just the offenders from the particular county where the halfway house is located." Marlowe's habeas petition identifies these three facilities as "Damacus Way, 180 Degrees, and RS Eden Ashland." Marlowe's petition further alleges that the DOC "refuses to place [him] in one of these halfway houses because the supervising agent claims that [he] cannot supervise [Marlowe] as his county of conviction is Washington County."

The true issue in this case, however, is not whether the DOC has an obligation to actually find Marlowe a suitable residence.[2] Rather, the issue is whether the DOC has an obligation to restructure the conditions of Marlowe's supervised release when no suitable residence exists in his county of commit but suitable residences are available in a neighboring county.

DOC rules allow for a "restructure" of the conditions of supervised release upon request by an inmate, with the HRU executive officer given authority to consider such restructuring. Minn. R. 2940.0400.2700, subp. 1 (2007). Moreover, Minn. R. 2940.2400 (2007) specifically provides: "If no community program is available at the time of release, the matter shall be referred to the executive officer of the [HRU] for approval of an alternative program or plan." These rules demonstrate that the HRU has the authority to restructure an offender's conditions of release when the original conditions are unworkable. Here, the record indicates that the HRU officer mistakenly believed that he had no authority to do anything except revoke Marlowe's release.

Arguments similar to the one now made by Marlowe, that the DOC should have placed an offender in a state-funded halfway house outside of his county of commitment, have been previously made to this court without success. In *Truelson v. Fabian*, this court stated that "nothing in the rules or statutes requires the [DOC] to find [an offender] a place to live after supervised release as part of his release plan." 2008 WL 933543, at *3 (Minn.App. Apr.8, 2008). In *State ex rel. Johnson v. Fabian*, this court found "no authority requiring the department of corrections to assign, or such halfway houses to accept, an inmate like Johnson on ISR." 2005 WL 704302, at *2 (Minn.App. Mar.29, 2005), *review denied* (Minn. June 14, 2005).

But the facts and records in those cases were substantially different from the facts and record here, where it is clear that a suitable residential placement is available in a neighboring county. At the very least, when a condition becomes unwork-

---

**2.** Marlowe also argues that he is basically homeless and that the DOC's finding that he violated his conditions of release under these circumstances is fundamentally unfair and arbitrary. Marlowe asserts that the DOC has an "emergency funding grant specifically designed to assist offenders released without housing to pay initial rents," citing Minn. DOC Policy Number 205.130 (Apr. 1, 2005).

But, as the commissioner notes, this policy merely provides for financial assistance to an offender who is about to become homeless; it does not require the DOC to find an offender a suitable residence. Marlowe testified that he has funds for first and last month's rent. Although Marlowe may be homeless because he has nowhere to go, his homelessness is not due to lack of finances.

able at the time of release due to circumstances largely outside the control of an offender, the DOC must consider a restructure or modification of those conditions.

## DECISION

We therefore conclude that the DOC is required to reconsider its decision to revoke Marlowe's release. The DOC must consider restructuring Marlowe's release plan and must seek to develop a plan that can achieve Marlowe's release from prison and placement in a suitable and approved residence, whether in Washington County or in a neighboring county.

**Reversed and remanded.**