# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2748

_____

Brian Lee Marlowe,

   Appellant,

v.

Joan Fabian, individually and in her
official capacity as Commissioner of
the Minnesota Department of
Corrections; Jeffrey Peterson,
individually and in his official capacity
as Executive Officer of the Minnesota
Department of Corrections Hearing
and Release Unit,

   Appellees.

Appeal from the United States
District Court for the
District of Minnesota.

_____

Submitted: March 14, 2012
Filed: April 19, 2012

_____

Before MURPHY and GRUENDER, Circuit Judges, and ROSS,[1] District Judge.

_____

MURPHY, Circuit Judge.

_____

[1]The Honorable John A. Ross, United States District Judge for the Eastern District of Missouri, sitting by designation.

While serving a state sentence for first degree criminal sexual conduct, Brian Lee Marlowe sued two Department of Corrections officials under 42 U.S.C. § 1983 for unlawfully imprisoning him 375 days beyond the date on which he became eligible for supervised release. The district court[2] granted summary judgment to the state officials after determining that Marlowe had failed to satisfy the favorable termination requirement of Heck v. Humphrey. 512 U.S. 477 (1994). Marlowe appeals, and we affirm.

In 2002 Marlowe pled guilty in state district court in Washington County to first degree criminal sexual conduct for sexually abusing his seven year old daughter. Marlowe was sentenced to 108 months of imprisonment including a term of supervised release with five years of conditional release to run concurrently. His supervised release date was December 6, 2007. A few months before that date he was determined to be a risk level two predatory offender, meaning he would require intensive supervised release. See Minn. Stat. § 244.05 subdiv. 6(a); Minn. Dep't of Corr., Div. Directive 203.010 (July 3, 2007). Offenders in intensive supervised release are assigned to supervising agents who are responsible for implementing and monitoring release conditions. See Minn. Dep't of Corr., Div. Directive 201.023 (July 3, 2007). According to affidavits submitted by personnel from the Department of Corrections (the Department), a standard condition of intensive supervised release is that the offender live in a residence approved by the Department.

In the majority of Minnesota counties, supervision for offenders on intensive supervised release is provided by the Department, however, in twelve counties, supervision is provided by county personnel. Ramsey County is one of the latter, and such counties generally will not supervise offenders released to transitional housing

_____

[2]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

in their jurisdiction unless the individuals have some other tie to the county, such as a previous residence.

Several months prior to Marlowe's release from prison, he began working with his case manager at the prison to locate a suitable residence. The record indicates that sex offenders like Marlowe are difficult to place because there are many restrictions on where they can live, such as not living near children, and few residences are willing to accept them. His case manager located one possible residence, a halfway house in Ramsey County called RS Eden, but Ramsey County refused to supervise Marlowe because he lacked sufficient ties to the county. Both Marlowe and the case manager contacted several other potential residences but were unable to find a suitable one prior to his supervised release date.

If an offender is unable to find other approved housing, his default place of residence becomes the county which committed him to state custody. The offender is then assigned to a supervising agent with jurisdiction over that county. See Minn. Dep't of Corr., Div. Directive 203.010 (July 3, 2007). Marlowe was thus assigned to a supervising agent from Washington County. On his supervised release date Marlowe's supervising agent picked him up at the Rush City correctional facility and took him to the bank to cash a check and then to a fast food restaurant. There, Marlowe used the agent's cell phone to make a last attempt to find a residence. When Marlowe was unable to find one, the supervising agent took him to the county jail and explained that his supervised release would likely be revoked if he did not locate housing within a few weeks.

Less than two weeks later, a hearing officer from the Department's hearing and release unit conducted a revocation hearing. The hearing officer determined that Marlowe was violating a condition of his supervised release because he was not living in approved housing and revoked his release. The officer informed Marlowe that his supervised release would be reinstated if he were to find approved housing.

-3-

Marlowe appealed the decision to Jeffrey Peterson, the executive officer of the hearing and release unit, who affirmed it. As a result of the revocation, Marlowe was incarcerated at the Lino Lakes correctional facility where a new case manager was assigned and began to look for housing for him.

In February 2008 Marlowe petitioned a Minnesota state district court for a writ of habeas corpus, alleging that he was being unlawfully imprisoned beyond his supervised release date. The state district court denied relief. On appeal, the Minnesota court of appeals remanded to the state district court without ordering his release. It nevertheless instructed the Department to "consider restructuring Marlowe's release plan" and to "seek to develop a plan that can achieve Marlowe's release from prison and placement in a suitable and approved residence, whether in Washington County or in a neighboring county." State, ex rel. Marlowe v. Fabian, 755 N.W.2d 792, 797 (Minn. Ct. App. 2008).

In September 2008 RS Eden placed Marlowe on its waiting list, anticipating that space would become available for him in December of that year. Ramsey County then changed its position and agreed to provide supervision. Shortly thereafter, Marlowe's counsel wrote to the state district court indicating that he would consider the habeas matter "resolved" if Marlowe were released to RS Eden as planned. On December 16, 2008 Marlowe was released to RS Eden.

Marlowe subsequently sued Joan Fabian, the Department's commissioner, and Jeffrey Peterson, executive officer of its hearing and release unit, in the federal district court. He sued them in both their individual and official capacities for unlawfully imprisoning him. He sought damages and a declaratory judgment under § 1983 for violations of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights. In addition his complaint asked for damages for violations of the Minnesota Constitution and common law false imprisonment. All parties moved for summary judgment.

The district court granted summary judgment to the defendants after determining that Marlowe's § 1983 claims were barred by Heck v. Humphrey, 512 U.S. 477 (1994), that his declaratory judgment action was moot, that the Minnesota Constitution provided no private cause of action for his claims, and that it would not exercise supplemental jurisdiction over the state law tort claim after dismissing the federal claims. Marlowe appeals only the adverse grant of summary judgment on his § 1983 claims.

We review a district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences that can be drawn from the record. See Chivers v. Wal-Mart Stores, Inc., 641 F.3d 927, 932 (8th Cir. 2011). We will affirm "if no genuine issue of material fact exists and the [movant] is entitled to judgment as a matter of law." Id. (alteration in original) (citation omitted); see Fed. R. Civ. P. 56(a).

Marlowe argues that the district court erred in concluding that his § 1983 claims were barred by the Supreme Court's decision in Heck. There, the Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment . . . a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck, 512 U.S. at 486–87. This holding has been referred to as the "favorable termination" requirement. See id. at 499 n.4 (Souter, J., concurring); Sheldon v. Hundley, 83 F.3d 231, 233 (8th Cir. 1996). We have recognized that this type of § 1983 plaintiff must show a favorable termination by state or federal authorities even when he is no longer incarcerated. See Entzi v. Redmann, 485 F.3d 998, 1003 (8th Cir. 2007).

Marlowe contends that Heck does not bar his claims because the Minnesota court of appeals decision remanding his habeas claim to the trial court satisfies the favorable termination requirement. See Marlowe, 755 N.W.2d at 797. That decision was not a favorable termination for Marlowe, however, because his incarceration was not "reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." Heck, 512 U.S. at 489. Although Marlowe had sought a writ of habeas corpus ordering his immediate release to a halfway house, the court of appeals did not grant that relief. Instead, the appellate court directed the Department to "consider restructuring Marlowe's release plan" and to "seek to develop a plan" that could lead to his release from prison. Marlowe, 755 N.W.2d at 797. In other words, the court was asking the Department to "consider" and "seek" a resolution to Marlowe's housing dilemma. It thus encouraged the department to find a solution.

The court of appeals decision did not invalidate the Department's ongoing imprisonment of Marlowe. It did not hold that any portion of his incarceration had been unlawful, and it allowed the Department to continue to incarcerate him until he met all the conditions of his supervised release. Indeed, following the court's decision the Department kept him incarcerated for another three months until placement in approved housing could be arranged. Marlowe can point to no cases where a decision like the one issued by the court of appeals here was determined to be a favorable termination.

Marlowe argues that he satisfied the "spirit" of Heck by first bringing his claim in a state habeas proceeding. Heck made clear, however, that the favorable termination requirement is not an "exhaustion" requirement which a plaintiff can satisfy by merely pursuing his available state remedies. 512 U.S. at 489. Rather, a plaintiff has no cause of action under § 1983 for damage claims for unlawful imprisonment until he shows that the challenged incarceration was "reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." Id. The court of appeals decision here was in the nature of encouraging the Department to

-6-

continue to work on resolving Marlowe's housing dilemma.  It neither invalidated nor reversed the period of incarceration for which he now seeks damages.  Since Marlowe has not met the requirements of Heck, he has no cause of action for unlawful imprisonment under § 1983.

Because we conclude that the district court did not err in determining that Marlowe's § 1983 claims are barred by Heck, we need not reach any other issue discussed by the parties.  Accordingly, we affirm the judgment of the district court.

_____