# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 13-6031

_____

In re: Patriot Coal Corporation, also known as Eastern Coal Holding Company, Inc., also known as Patriot Coal Corporation Midwest

*Debtor*

-------------------------------

Patriot Coal Corporation; Heritage Coal Company LLC

*Plaintiffs - Appellants*

v.

Peabody Holding Company, LLC; Peabody Energy Corporation

*Defendants - Appellees*

_____

Appeal from United States Bankruptcy Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: August 2, 2013
Filed: August 21, 2013

_____

Before FEDERMAN, Chief Judge, KRESSEL and SHODEEN, Bankruptcy Judges.

_____

KRESSEL, Bankruptcy Judge

The appellants, Patriot Coal Corporation and Heritage Coal Company, LLC, appeal from the bankruptcy court's summary judgment denying their request for declaratory relief and granting summary judgment to the appellees, Peabody Holding Company, LLC, and Peabody Energy Corporation. *Patriot Coal Corp. v. Peabody Hodling Co. LLC*, 493 B.R. 530 (Bankr. E.D. Mo. 2013). Patriot Coal and Heritage Coal sought declaratory relief under 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 and requested a declaration that "Peabody Holding's obligations with respect to the healthcare benefits owed to the Assumed Retirees will not be affected by modification of the benefits of retirees of Heritage or Eastern Associated under Section 1114." The bankruptcy court held that Peabody Holding's obligations *would* be affected by a modification of the benefits under § 1114, denied the declaratory relief sought and ruled in Peabody Holding's favor. For the reasons that follow, we reverse.

## Background

Akin to a once amicable divorce gone awry, the parties here disagree about the nature of their dissolution agreement after one of them has experienced a change in circumstances. The players in this appeal are Peabody Energy, Peabody Holding, Patriot Coal and Heritage Coal. In the background is Eastern Associated Coal. At one time, Peabody Holding, Patriot, Heritage and Eastern were all Peabody Energy subsidiaries. After a strategic spin off, only Peabody Holding remains with parent Peabody Energy, while Heritage and Eastern now operate under the Patriot Coal umbrella. A little background is required to make sense of it all.

The United Mine Workers of America is a union that represents a number of workers employed by the parties. The Bituminous Coal Operators' Association is a multiemployer bargaining association formed for the sole purpose of bargaining with the UMWA on behalf of its members. The most recent round of negotiations between

the UMWA and the BCOA resulted in the 2011 National Bituminous Coal Wage Agreement–the current NBCWA–which expires on December 31, 2016.

**"Me Too" Agreement and Article XX**

Neither Heritage nor Eastern is a member of the BCOA. However, both companies have entered into what is known as a "me too" agreement with the UMWA. While not entirely clear from the record, it appears to us that some "me too" agreements simply say, "we agree to abide by the NBCWA," while others are individually negotiated between the employer and the UMWA, incorporating certain articles from the NBCWA by reference. Heritage's agreement is of the latter variety and has specifically incorporated article XX of the NBCWA into its "me too" agreement. Article XX defines and makes provision for health and other benefits for retirees and includes this pertinent language:

> Each signatory Employer shall establish and maintain an Employee benefit plan to provide, implemented through an insurance carrier(s), health and other non-pension benefits for its Employees ... The benefits provided by the Employer to its eligible Participants pursuant to such plan shall be guaranteed during the term of this Agreement by that Employer at levels set forth in such plan.

**Acknowledgment and Assent Agreement**

On August 13, 2007, while Peabody Energy was contemplating a strategic spin off, Peabody Holding entered into an acknowledgment and assent agreement with the UMWA. The agreement stated that Peabody Holding would be "primarily obligated" to pay for the benefits for approximately 3,100 of Heritage's retirees, known as the assumed retirees or the attachment A retirees, *under* the terms of an individual employer plan maintained by Heritage pursuant to article XX. The agreement

3

dictated that Peabody Holding would enter into a liabilities assumption agreement with Heritage to consummate and define their relationship post-separation.

Additionally, this agreement stated that Peabody Holding will not be a party to a collective bargaining agreement with the UMWA, that Peabody Holding does not have a labor relationship with the UMWA, and the acknowledgment and assent agreement does not create any right of action by the UMWA or its retirees against Peabody Holding with respect to the benefits provided by Heritage's individual employer plan. However, the UMWA and its members are allowed to file suit "for any benefits [Peabody Holding] has agreed to pay under the [NBCWA Liabilities Assumption Agreement], or as otherwise provided under the [Heritage Individual Employer Plan]."

**Liabilities Assumption Agreement**

On October 22, 2007, Peabody Energy, Peabody Holding, Patriot, and Heritage entered in to the NBCWA Individual Employer Plan Liabilities Assumption Agreement. At this time, Patriot and Heritage were both subsidiaries of Peabody Energy, as was Peabody Holding. The liabilities assumption agreement reiterated that Heritage "has an obligation to provide retiree healthcare pursuant to its 'me too' labor contract which incorporates by reference Article XX of the NBCWA." It further stated that "the parties desire that [Heritage] continue to provide the retiree healthcare required by Article XX of the NBCWA (or any successor [Heritage] labor agreement)." Peabody Holding assumed some of the liabilities for providing retiree healthcare "to the extent expressly set forth in this agreement."

Section 1(d) the NBCWA Individual Employment Plan Liabilities provides, in its entirety:

4

The term "NBCWA Individual Employer Plan Liabilities" shall mean amounts [Heritage] pays for benefits to those retirees of [Heritage] identified on Attachment A hereto, and such retirees' eligible dependents, under the terms of the NBCWA Individual Employer Plan, *provided*, that such retirees had vested in a right to receive retiree health benefits under the NBCWA Individual Employer Plan as of December 21, 2006 and that such retirees were retired from coal mine employment as of December 31, 2006 and did not thereafter return to employment with any company signatory to a labor agreement which requires the employer to provide health benefits to its future UMWA retirees. Changes to benefit levels, cost containment programs, plan design or other such modification contained in [Heritage's] future UMWA labor agreements that are applicable to the retirees and eligible dependents subject to this Agreement shall be included for the purposes of the definition of "NBCWA Individual Employer Plan Liabilities"; *provided* that, for purposes of any successor [Heritage] labor contract, "NBCWA Individual Employer Plan Liabilities" shall be based on benefits that are the lesser of (i) benefits provided in any future UMWA labor agreement with Eastern Associated Coal, LLC or any successor of Eastern Associated Coal, LLC and (ii) benefits provided in any future NBCWA Labor agreement or any successor labor agreement and offered to Eastern Associated Coal, LLC or any successor of Eastern Associated Coal, LLC or which Eastern Associated Coal, LLC or any successor of Eastern Associated Coal, LLC had the opportunity to sign.

The parties refer to the conditional limitation that begins with the underlined word above (*provided*) as the Eastern proviso.[1]

Section 2(a) states, "[Peabody Holding] assumes, and agrees to pay and discharge when due in accordance herewith, the NBCWA Individual Employer Plan Liabilities." The NBCWA individual employer plan liabilities are defined above. Section 2 also states that Patriot can direct a third-party administrator to send the bill directly to Peabody Holding.

---

[1]Italics in the original; underline emphasis added.

5

**Strategic spin-off**

On October 31, 2007, Peabody Energy parted ways with Patriot Coal and several subsidiaries. The spun off companies comprised the coal operations with UMWA represented labor located in both the Illinois basin and the Appalachia region. Patriot Coal became a parent corporation; Heritage and Eastern, among others, became Patriot Coal subsidiaries.

**Filing and Change of Venue**

Patriot and a number of its subsidiaries, including Heritage and Eastern, filed petitions under chapter 11 on July 9, 2012, in the Southern District of New York. The jointly administered cases were transferred to the Eastern District of Missouri on December 19, 2012.

**Adversary Proceeding and the §§ 1113 and 1114 Motion**

Patriot and Heritage filed this adversary proceeding and, together with the other debtors, a motion under 11 U.S.C. §§ 1113 and 1114. Section 1113 provides debtors with the procedures necessary to gain bankruptcy court approval to reject a collective bargaining agreement. Section 1114 requires a debtor to timely pay retiree benefits unless the bankruptcy court determines that modification of those benefits is necessary.

The plaintiffs' motion for summary judgment in the adversary proceeding was heard and decided congruently with the debtors' motion for relief under 11 U.S.C. §§ 1113 and 1114. The motion was granted allowing Patriot to reject the collective bargaining agreement and modify retiree benefits for certain current retirees. *In re Patriot Coal Corp.*, 493 B.R. 65 (Bankr. E.D. Mo. 2013). The order authorized implementation of the fifth § 1113 and § 1114 proposals. If implemented, the § 1114

proposal calls for modifying the retiree health care benefits for all Heritage retirees, except the assumed retirees, by transferring the obligation to provide benefits from Heritage to a voluntary employee beneficiary association, or VEBA, as early as July 1, 2013. More specifically, the proposal provided that "the 1114 Proposal shall not apply to the Peabody-Assumed Group" so long as Patriot's relief for its own retirees under § 1114 do not permit Peabody to reduce its obligations. The VEBA is to be funded through an equity stake in the reorganized Patriot, along with an initial cash contribution, royalty payments and profit sharing. The UMWA filed a notice of appeal and elected to have its appeal heard by the district court.

Patriot and Heritage sought a judgment declaring that "Peabody Holding's obligations with respect to the healthcare benefits owed to the Assumed Retirees will not be affected by modification of the benefits of retirees of Heritage or Eastern Associated under Section 1114." The bankruptcy court framed the issue thusly: "whether the obligation to pay [benefits] lies with Heritage and is funded by Peabody–or the obligation lies with Peabody and Heritage is merely Peabody's agent." The bankruptcy court held that all liabilities remained with Heritage and Peabody was simply obligated to fund those liabilities.

In its opinion, the bankruptcy court stated that the terms of the liability assumption agreement are unambiguous and as such, it should be enforced by its plain meaning. Based on the Eastern proviso, the bankruptcy court held, "Peabody cannot be made to fund benefits that exceed the benefits that Eastern Associated is contractually obligated to fund ... the liabilities remained with Heritage." Further, it stated that "it goes without saying that there is only one Heritage Individual Employer Plan which Plaintiffs must either assume or reject in its entirety, and Plaintiffs have requested to reject it." Patriot and Heritage appeal.

On appeal, Patriot and Heritage argue that Peabody is the primary obligor of the assumed liabilities, that the § 1114 proposal did not propose modifying the

assumed retirees benefits, and that the bankruptcy court's §§ 1113 and 1114 order is not a successor labor contract. Additionally, in a footnote, they argue that if we deem the language of the agreements ambiguous, summary judgment is not appropriate to dispose of this adversary proceeding.

Peabody Holding argues that the bankruptcy court correctly held that the liabilities for providing healthcare to the assumed retirees under the "me too" agreement remain with Heritage and Peabody's only obligation is to fund the liabilities, that Peabody Holding only agreed to be liable for paying Patriot's contractual obligation to provide health care benefits–not a statutory obligation, and that this appeal will become moot once the debtors enter into any new labor agreement with the UMWA. We have jurisdiction to hear this appeal. 28 U.S.C. § 158(d).

## Standard of Review

We review a bankruptcy court's grant of summary judgment *de novo,* "viewing the facts in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inference that can be drawn from the record." *Marlowe v. Fabian*, 676 F.3d 743, 746 (8th Cir. 2012).

## Analysis

While Patriot and Heritage requested a declaration that the § 1114 portion of the motion would not affect Peabody's obligation, the bankruptcy court held that the § 1113 portion, the rejection of the collective bargaining agreement, would assuredly affect it. The bankruptcy court held that Heritage is liable to provide the assumed retirees benefits, pursuant to the "me too" agreement and article XX, and Peabody Holding is merely required to fund Heritage's obligations via the liabilities assumption agreement. Now that the "me too" agreement has been rejected and

8

article XX is likely to be deleted from the fifth § 1113 proposal, said the bankruptcy court, Heritage is no longer obligated to provide the assumed retirees' benefits, and therefore, Peabody is not required to fund them.

Under the bankruptcy court's theory, only Heritage or Peabody could be liable to the UMWA–and the court held that only Heritage was liable. On appeal, Heritage concedes that it is secondarily liable to pay for the assumed retirees' benefits but argues that Peabody is primarily obligated to the assumed retirees. Peabody Holding asserts that it is only liable for paying for the assumed retirees's benefits that Heritage is contractually obligated to provide and that because the "me too" agreement has been rejected, and there is no more contractual obligation, Heritage is no longer contractually obligated to provide benefits. Therefore, Peabody Holding argues, it could not be liable until a new labor agreement is in place. Peabody Holding concedes that when a new labor agreement is reached, it will be liable to fund whatever level of benefits Heritage is obligated to provide, subject to the Eastern proviso. We are not concerned with, and express no opinion on, what effect a new labor agreement would have on Peabody Holding's obligations to the assumed retirees. For the purposes of this appeal, we are only concerned with the affect the grant of the § 1114 portion of Heritage's motion has on those obligations.

While the parties argue extensively about which of them is "primarily" liable, we devote no time to deciding that, since it is clear that both are liable under the agreements. The question is: who is liable now?

The legal issues are threefold. First, did the assumed retirees' benefits emanating from the "me too" collective bargaining agreement survive rejection of the collective bargaining agreement? Second, if those benefits survive, were they modified? Third, is Peabody Holding relieved from its liability under the liabilities assumption agreement?

9

**The Assumed Retirees' Benefits Survived Rejection**

Rejection of a collective bargaining agreement under § 1113 and "authority conferred by the bankruptcy court" results in a complete abrogation of the collective bargaining agreement. *Nw. Airlines Corp. v. Assoc. of Flight Attendants (In re Nw. Airlines Corp.)*, 483 F.3d 160, 172 (2d Cir. 2007). In our view, this includes the debtors' obligation to fund its retirees' benefits.

However, § 1114 states:

> Notwithstanding any other provision of this title, the debtor in possession ... shall timely pay and shall not modify any retiree benefits, except that–the court, on motion of the [debtor in possession] or [union], and after notice and a hearing, may order modification of such payments, pursuant to the provisions of subsections (g) and (h) of this section.

11 U.S.C. 1114(e)(1).

We observe that § 1114(e)(1) begins with "[n]otwithstanding any other provisions of this title," which obviously includes § 1113. This plain statutory language indicates that a collective bargaining agreement can be rejected under § 1113 and the debtor would still be required to timely pay for, and refrain from modifying, retiree benefits provided for in that labor agreement unless authorization to modify is granted under § 1114.[2] *See In re Horsehead Indus., Inc.*, 300 B.R. 573

---

[2]The court shall enter an order providing for modification in the payment of retiree benefits if the court finds that–the [debtor in possession] has, prior to the hearing, made a proposal that fulfills the requirements of subsection (f); the [union] has refused to accept such proposal without good cause; and such modification is necessary to permit the reorganization of the debtor and assures that all creditors, the debtor, and all of the affected parties are treated fairly and equitably, and is clearly favored by the balance of the equities. 11 U.S.C. 1114(g).

(Bankr. S.D.N.Y. 2003) (demonstrating that the statutory requirements for rejection under § 1113 and modification under § 1114 are the same and that absent good faith negotiations over a proposal to terminate benefits payable to retirees, retiree benefits survive rejection of the collective bargaining agreement). As we have previously stated, "[s]ection 1114 was enacted in 1988 and deals with retiree benefits, including those found in a union bargaining agreement." *United Food & Commercial Workers Union, Local 211 v. Family Snacks, Inc. (In re Family Snacks, Inc.)*, 257 B.R. 884, 896 (B.A.P. 8th Cir. 2001).

Put another way, while Heritage's rejection of its collective bargaining agreement relieves it of its contractual obligation to pay benefits, it still has a statutory obligation to pay those same benefits, at least until all of the steps of § 1114 are complied with. We hold that upon rejection of the "me too" agreement under § 1113, absent modification under § 1114, Heritage was still required to comply with the terms of the individual employer plan and provide its retirees those plan defined benefits.

**Neither Heritage nor the UMWA Requested a Modification**

While Heritage sought bankruptcy court approval to modify some of its retiree benefits obligations, Heritage was adamant that its motion did not seek to modify the assumed retirees' benefits. Heritage emphatically and repeatedly stated as much at the hearing. In the § 1114 proposal, Heritage stated that "the 1114 Proposal shall not apply to the Peabody-Assumed Group" so long as Patriot's relief for its own retirees under § 1114 does not permit Peabody to reduce its obligations.

It is clear to us that the legal effect of this so called carve-out language is that not only did Heritage's motion not request approval to modify the assumed retirees'

benefits, it specifically requested that the court *not* grant it such approval. With such a request in the motion, those benefits remain undisturbed by the court's order granting Heritage permission to modify the rest of its retirees' benefits. We also note that the statute prohibits the bankruptcy court from modifying benefits to a level below that proposed by the debtor in possession. 11 U.S.C. § 1114(g).

Additionally, even if the bankruptcy court authorized Heritage to modify the assumed retirees' benefits, Heritage was not required to modify them and has not.

**Peabody Holding's Obligation is also Undisturbed**

We disagree with the bankruptcy court that only Heritage is liable for the benefits; both parties are liable. Heritage is made liable to the UMWA through the "me too" agreement, pursuant to article XX, which requires Heritage to provide non-pension benefits to its employees and retirees at the levels in the individual employer plan "guaranteed through the term of this Agreement."[3] Peabody Holding is made liable through the acknowledgment and assent agreement. The assent agreement states that the UMWA can file suit against Peabody Holding "for any benefits [Peabody Holding] has agreed to pay under the [NBCWA Liabilities Assumption Agreement], or as otherwise provided under the [Heritage Individual Employer Plan]." This provision makes it clear that Peabody is liable.

Determining that both parties are liable under the complicated tapestry of documents, agreements and plans does not resolve Peabody Holding's argument that it only agreed to assume and pay retiree benefits that Heritage is contractually

---

[3]We are unclear whether "this Agreement" refers to the 2011 NBCWA, which is still in effect, or the Heritage-UMWA "me too" agreement, which has been rejected. This ambiguity, however, is immaterial to the outcome of this appeal.

obligated to provide. Peabody Holding argues that any obligation remaining under § 1114 is a statutory obligation which it did not agree to assume.

While it is true that Peabody Holding's obligations and liability spring from a contract, Peabody Holding's characterization of what it agreed to is inaccurate. We agree with the bankruptcy court that the agreements are plain and unambiguous. Heritage rejected its "me too" agreement with the UMWA. The liabilities assumption agreement, to the contrary, remains in effect–Peabody Holding has conceded as much by acknowledging their obligation remains under any future labor agreement. The assumption agreement plainly states that Peabody Holding agreed to assume and pay, "amounts [Heritage] pays for benefits to those retirees of [Heritage] identified on Attachment A hereto, and such retirees' eligible dependents, *under* the terms of the NBCWA Individual Employer Plan."[4] Whether Heritage's obligation is contractual or statutory in nature is of no consequence–Heritage is still obligated by § 1114 to provide benefits under the terms of the individual employer plan. This is precisely what Peabody Holding agreed to assume and pay. Peabody Holding's obligation under the liabilities assumption agreement remains undisturbed upon grant of the §§ 1113 and 1114 motion.

Peabody Holding's remaining arguments lack merit. We express no opinion on what may trigger the Eastern proviso or the future potential effects that provision has on Peabody Holding's obligations nor do we express an opinion on what effect a modification to the assumed retirees' benefits under § 1114 would have on Peabody Holding's obligations.

---

[4]Emphasis added.

## Conclusion

The decision of the bankruptcy court is REVERSED.

_____

14